JEFFREY C. HALLAM (State Bar No. 161259)
E-Mail:      *jhallam@sideman.com*
ZACHARY J. ALINDER (State Bar No. 209009)
E-Mail:      *zalinder@sideman.com*
PETER M. COLOSI (State Bar No. 252951)
E-Mail:      *pcolosi@sideman.com*
REBECCA K. FELSENTHAL (State Bar No. 303476)
E-Mail:      *rfelsenthal@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:     (415) 392-1960
Facsimile:     (415) 392-0827

Attorneys for Plaintiff
FITBIT, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITBIT, INC., a Delaware Corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>LAGUNA 2, LLC, A New Jersey Limited Liability Company, JOEL BLANK, an individual; and DOES 1-30, inclusive,<br><br>              Defendants. | Case No. 3:17-cv-00079<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>1.  **FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING;**<br>2.  **FEDERAL TRADEMARK DILUTION;**<br>3.  **FEDERAL UNFAIR COMPETITION; AND,**<br>4.  **CALIFORNIA UNFAIR COMPETITION.**<br><br>**DEMAND FOR JURY TRIAL** |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Plaintiff Fitbit, Inc. ("Fitbit"), by and through its undersigned counsel, for its Complaint

2   against Defendants Laguna 2, LLC ("L2") and Joel Blank ("Blank"), and Does 1 through 30,

3   inclusive (collectively, "Defendants"), complains and alleges as follows:

4                                    **INTRODUCTION**

5   1.   Fitbit recently caught Defendants selling non-genuine "Fitbit" branded products

6   that were never supposed to be resold to consumers at all.  These products were originally

7   manufactured by Fitbit, but because they did not meet Fitbit's high quality standards, they were

8   designated to be scrapped and/or recycled.  Rather than being destroyed as part of Fitbit's standard

9   quality control processes, these scrap products instead were diverted from Fitbit's supply chain,

10  placed into counterfeit packaging, and then resold by Defendants through numerous non-

11  authorized online retailers, under the guise that they were "refurbished" genuine Fitbit products.

12  2.   Just before the holidays, Groupon, one of those online retailers, returned thousands

13  of these "Fitbit" branded products to Defendants, after consumers purchased them from Groupon,

14  and quickly returned them. Defendants nevertheless have refused to allow Fitbit to inspect any of

15  their "Fitbit" branded inventory, including these Groupon returns, which would be necessary to

16  ensure that Defendants do not sell any further scrap products. Indeed, Defendants have continued

17  to threaten to resell these products with no regard for the harm to Fitbit, its brand, and the

18  consuming public.

19  3.   Fitbit is a San Francisco-based corporation that specializes in the design,

20  production, and sale of connected health and fitness wearable products and various associated

21  mobile applications and online resources.  Fitbit is a leader in the sale of connected health and

22  fitness wearable products with current sales exceeding $2 billion annually.

23  4.   Fitbit sells the majority of its products and services directly to consumers.  Fitbit

24  products and services have a reputation with these consumers for being high quality, innovative,

25  and reliable.  To maintain this strong reputation with the consuming public, among other things,

26  Fitbit expends substantial resources on quality control in its supply chain.   These supply chain

27  processes, detailed further below, ensure that Fitbit's quality control is of the highest level, further

28  increasing Fitbit's established reputation for high quality and reliable products and services.

5.      Defendants' unlawful conduct, as alleged in more detail below, has not only caused Fitbit significant monetary damages, but it also seeks to seriously undermine the established reputation for quality and reliable products and services that Fitbit has worked so hard to achieve. Indeed, numerous end customers who have purchased "Fitbit" branded products from Defendants, believing they would receive an authorized Fitbit product that meets Fitbit's high quality standards, have been sorely disappointed and confused, leaving scathing reviews and returning thousands of these products.  As such, Fitbit not only lost the opportunity to sell an authorized, high quality product to hundreds of thousands of consumers, but also has taken a significant and ongoing hit to its reputation, brand, and goodwill with members of the consuming public.

6.      Despite being given notice and an opportunity to change their ways, Defendants have refused to curtail, and indeed, have expanded their unlawful business practices.  Defendants have even brazenly requested that Fitbit approve their further resale of the "Fitbit" products currently in their inventory, including the customer-returned products from Groupon, without allowing Fitbit the chance to inspect them to determine whether they also were unlawfully diverted from Fitbit's quality control and supply chain.  Fitbit brings this Action to put a stop to Defendants' unlawful and infringing conduct, to enjoin further unlawful and infringing conduct, and to recover full damages for the harm they have caused.

## THE PARTIES

7.      Fitbit is, and was at all relevant times, a Delaware corporation with its principal place of business at 405 Howard Street, Suite 550, San Francisco, California 94105.

8.      Fitbit is informed and believes, and thereon alleges, that Defendant L2 is a New Jersey limited liability company with its principal place of business at 12 Sullivan Street, Westwood, New Jersey 07675.  Fitbit is informed and believes, and thereon alleges, that L2 does business through a variety of online distributors, including but not limited to eBay.com, Groupon.com, Woot.com, and Overstock.com.

9.      Fitbit is informed and believes, and thereon alleges, that Defendant Blank is also a New Jersey resident.  Fitbit is informed and believes, and thereon alleges, that Defendant Blank acts as Managing Partner of Defendant L2, and therefore, that Defendant Blank participated in,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    authorized, and directed the activities of Defendant L2, as set forth in detail in this Complaint.

2        10.    The true names and capacities, whether individual, corporate, associate, or

3    otherwise, of the Defendants named herein as Does 1 through 30, inclusive, are unknown to Fitbit

4    who, therefore, sues said Defendants by such fictitious names.  Fitbit is informed and believes, and

5    thereon alleges, that each of the Defendants designated herein as a Doe directed, conducted,

6    participated in, ratified, endorsed or was otherwise involved in, is legally responsible for, and has

7    liability, in some manner, for the events and acts alleged in this Complaint.  Fitbit will amend this

8    Complaint to reflect the true names and capacities of these Doe Defendants when the same shall

9    have been fully and finally ascertained.

10        11.    Fitbit is informed and believes, and thereon alleges, that at all times relevant to this

11    action, each Defendant, including those fictitiously named Doe Defendants 1 through 30,

12    inclusive, was the agent, servant, employee, partner, joint venturer, accomplice, conspirator, alter

13    ego or surety of the other Defendants and was acting within the scope of that agency, employment,

14    partnership, venture, or suretyship with the knowledge and consent or ratification of each of the

15    other Defendants in doing the things alleged in this Complaint.

16                        **JURISDICTION AND VENUE**

17        12.    This Court has personal jurisdiction over Defendants because the acts complained

18    of arise out of and relate to Defendants' resale of scrap non-genuine Fitbit products in counterfeit

19    packaging into the Northern District of California.  Further, Fitbit is informed and believes, and

20    thereon alleges, that the acts complained of arise out of and relate to Defendants' purchase of these

21    scrap, non-genuine Fitbit products from a company located in California.  Further, Defendants sell

22    their products, among other websites, through Ebay.com, which is located in the Northern District

23    of California.  In addition, Defendants have placed labels on their packaging directing their

24    customers to log onto Fitbit's website to setup these scrap, non-genuine Fitbit products and to

25    download product manuals from Fitbit, knowing that Fitbit is located in San Francisco, California.

26    In addition to the above, venue for this action also properly lies in the Northern District of

27    California pursuant to 28 U.S.C. § 1391(b)(2) because Defendants committed acts in furtherance

28    of their operation, and a substantial part of the property that is the subject of this action is located,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    within this District.

2         13.    This Court has original subject matter jurisdiction over this action pursuant to 28

3    U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121, because Fitbit's claims arise under Federal

4    statutes, including the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*

5         14.    This Court has supplemental jurisdiction over Fitbit's state law claim for relief

6    pursuant to 28 U.S.C. §§ 1338(b) and 1367 because the claim is so related to Fitbit's claims under

7    Federal law that they form part of the same case or controversy and derive from a common

8    nucleus of operative facts.

9                            **INTRA-DISTRICT ASSIGNMENT**

10        15.    In accordance with N.D. Cal. Civ. L.R. 3-2(c), this Action is properly assigned on a

11   District-wide basis because it relates to Intellectual Property.

12                            **FACTUAL ALLEGATIONS**

13        16.    Fitbit is a leader in the sale of connected health and fitness wearable products and

14   various associated mobile applications and online resources.  Fitbit has built up tremendous

15   goodwill and brand reputation among consumers through significant investment in advertising,

16   promoting, and delivering products and services of the highest quality under Fitbit's federally-

17   registered trademarks.  Defendants' infringement and counterfeiting, as alleged further below, has

18   not only caused monetary damages to Fitbit, but also undermines, diminishes, and tarnishes

19   Fitbit's brand, reputation, and goodwill among consumers and members of the trade.

20        **A.    THE FITBIT MARKS**

21        17.    Fitbit is the owner of numerous federally registered trademarks related to the Fitbit

22   brand of products and services, including but not limited to the following:

| TRADEMARK | REGISTRATION NUMBER | GOODS/SERVICES |
|-----------|--------------------|-----------------| 
| FITBIT | 3,732,334 | Among other goods and services: Multifunctional electronic devices for displaying, measuring, and uploading to the Internet information including time, date, body and heart rates, global positioning, direction, distance, altitude, speed, steps taken, calories burned, navigational information, weather information, the temperature, wind speed, and the declination of body and |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| | | |
|---|---|---|
| | | heart rates, altitude and speed. |
| FITBIT | 4,851,801 | Among other goods and services: Pedometers; altimeters; scales and personal weighing scales; multifunctional electronic devices for displaying, measuring, and uploading to the Internet information including time, date, heart rate, global positioning, direction, distance, altitude, speed, steps taken, calories burned, navigational information, weather information, temperature, wind speed, changes in heart rate, activity level, hours slept, quality of sleep, and silent wake alarm; computer software for wireless data communication for receiving, processing, transmitting and displaying information relating to fitness, body fat, body mass index; computer software for managing information regarding tracking, compliance and motivation with a health and fitness program. |
| FITBIT FLEX | 4,507,210 | Multifunctional electronic devices for displaying, measuring, and uploading to the Internet information including time, distance, steps taken, activity level, calories burned, hours slept, quality of sleep, and silent wake alarm; pedometers. |
|  | 4,851,802 | Among other goods and services: Pedometers; altimeters; scales and personal weighing scales; multifunctional electronic devices for displaying, measuring, and uploading to the Internet information including time, date, heart rate, global positioning, direction, distance, altitude, speed, steps taken, calories burned, navigational information, weather information, temperature, wind speed, changes in heart rate, activity level, hours slept, quality of sleep, and silent wake alarm; computer software for wireless data communication for receiving, processing, transmitting and displaying information relating to fitness, body fat, body mass index; computer software for managing information regarding tracking, compliance and motivation with a health and fitness program. |
|  | 4,851,803 | Among other goods and services: Pedometers; altimeters; scales and personal weighing scales; multifunctional electronic devices for displaying, measuring, and uploading to the Internet information including time, date, heart rate, global positioning, direction, distance, altitude, speed, steps taken, calories burned, navigational information, changes in heart rate, activity level, hours slept, quality of sleep, and silent wake alarm; computer software for wireless data communication for receiving, processing, transmitting and displaying information relating to fitness, body fat, body mass index; computer |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| | | software for managing information regarding tracking, compliance and motivation with a health and fitness program. |
|---|---|---|

(Collectively, the "Fitbit Marks").  The Fitbit Marks were registered to Fitbit at its principal place of business at the time of each registration in San Francisco, California.

18.     The Fitbit Marks have been used in interstate commerce to identify and distinguish Fitbit's high quality products and services since approximately 2009.

19.     The Fitbit Marks have never been assigned or licensed to the Defendants in this matter.

20.     Fitbit has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Fitbit Marks.  The Fitbit Marks qualify as famous marks as the term is used in 15 U.S.C. Section 1125(c)(1).

21.     Fitbit has extensively used, advertised, and promoted the Fitbit Marks in the United States in association with the sale of connected health and fitness wearable products and various associated mobile applications and online resources, and has carefully monitored and policed the use of the Fitbit Marks.

22.     The Fitbit Marks are symbols of Fitbit's quality, reputation, and goodwill and have never been abandoned.

23.     As a result of Fitbit's efforts, members of the consuming public readily identify merchandise bearing the Fitbit Marks as being high quality merchandise manufactured and sold by Fitbit.

24.     The Fitbit Marks are inherently distinctive and have attained secondary meaning as an identifier of high quality connected health and fitness wearable products and various associated mobile applications and online resources.

25.     Fitbit is informed and believes, and thereon alleges, that at all times relevant to this action Defendants had full knowledge of Fitbit's ownership of the Fitbit Marks, including Fitbit's exclusive right to use and license such intellectual property and the goodwill associated with it.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**B.     FITBIT'S QUALITY CONTROL AND REVERSE LOGISTICS SUPPLY CHAIN PROCESS**

26.     To maintain its reputation for high quality products and services, Fitbit has established substantial, legitimate, and non-pretextual quality control procedures that it abides by and uses to ensure that non-conforming units do not diminish or tarnish Fitbit's brand and goodwill.  One of the ways that Fitbit does so is through a robust warranty and return program, as well as an established supply chain quality control process for any returns or exchanges from consumers, distributors, or anyone else.

27.     Because of the technical complexity of Fitbit products, Fitbit does not authorize any third party not associated with Fitbit to conduct refurbishment of Fitbit products for the intent of resale.  Instead, Fitbit has a reverse logistics supply chain process, whereby Fitbit products that do not meet its high quality standards or that have been returned for any reason are evaluated and either refurbished by authorized third parties or designated to be scrapped and/or recycled.

28.     Thus, Fitbit products that do not meet Fitbit's stringent quality standards for refurbishment are designated instead to be scrapped and/or recycled as part of Fitbit's standard supply chain processes.  The determination that such products cannot be refurbished and must be scrapped and/or recycled occurs for many reasons, including due to physical defects in the product.  Regardless of the reason, products that do not meet Fitbit's quality control standards and are designated to be scrapped and recycled are materially different from genuine Fitbit products.  Indeed, products that are removed from Fitbit's quality control processes without authorization themselves become counterfeit within the definition of the Lanham Act.

**C.     FITBIT PUT DEFENDANTS ON NOTICE OF THE FITBIT MARKS AND WARRANTY IN 2015**

29.     Defendants claim that their business model is to sell end of life, discontinued, and refurbished consumer electronics products.  Since at least sometime in 2015, Defendants' product offerings have included certain "Fitbit" branded products.

30.     In 2015, Fitbit discovered that Defendants were using the name "Fitbit" as their vendor name on a consumer electronics website, called www.thenextweb.com, and had

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   misappropriated Fitbit's trademarks and other intellectual property rights in the process.

2   Defendants were also not disclosing that their sales were not covered by Fitbit's warranty.  Fitbit

3   sent Defendants a cease and desist letter on November 19, 2015, demanding that Defendants halt

4   their infringement of Fitbit's intellectual property rights and not mislead consumers about any

5   warranty.  As such, no later than 2015, Defendants were on notice of Fitbit's federally-registered

6   trademarks and that further infringement would necessarily be a willful violation of Fitbit's

7   intellectual property rights.  Defendants appeared to comply with Fitbit's cease and desist letter,

8   and Fitbit believed that would be the end of the matter.

9

10      **D.    DEFENDANTS EXPAND THEIR INFRINGEMENT AND BEGIN SELLING
              PRODUCTS IN COUNTERFEIT PACKAGING**

11      31.     Rather than ceasing their violations of Fitbit's intellectual property rights,

12   Defendants instead have expanded their infringement, selling non-genuine "Fitbit" products

13   placed in counterfeit packaging, through much more established distribution channels, such as

14   eBay.com, Groupon.com, Woot.com, and Overstock.com (Defendants' "Established Distribution

15   Channels").  Indeed, Fitbit is informed and believes that, beginning in approximately 2015,

16   Defendants began selling a large volume of non-genuine "Fitbit" products online through their

17   Established Distribution Channels, under the guise that these products had merely been

18   "refurbished."

19      32.     Through the Groupon platform alone, Fitbit is informed and believes, and thereon

20   alleges, that Defendants have sold over 200,000 "Fitbit" branded products over the past two years,

21   with an MSRP value for new genuine Fitbit products of over $20 million.  Fitbit is informed and

22   believes, and thereon alleges, that Defendants have sold many more through its other Established

23   Distribution Channels, including over $80,000 of "Fitbit" branded products on eBay.com in the

24   last two years according to publicly available data.

25      33.     Fitbit has now confirmed through numerous purchases of Defendants' purportedly

26   "refurbished" Fitbit products through Defendants' Established Distribution Channels that

27   Defendants have been selling non-genuine and otherwise infringing "Fitbit" products, including in

28   counterfeit packaging mocked up to resemble genuine Fitbit return replacement packaging.  While

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Defendants claimed the products were merely "refurbished," Fitbit has confirmed that most of the products purchased from Defendants had actually been designated to be scrapped and/or recycled as part of Fitbit's standard quality control processes.

34. In other words, as part of Fitbit's standard quality control procedures, Fitbit and/or members of its authorized supply chain had designated these products to be scrapped and/or recycled due to some defect or other quality control issue, but at some point before that occurred, the product was diverted and ended up with Defendants reselling them to end customers.

35. To further deceive consumers, Defendants sold these scrap products in counterfeit packaging that attempts to mimic Fitbit's genuine return replacement packaging.

Example of Genuine Fitbit Return
Replacement Packaging:

Counterfeit "Fitbit" Packaging Used
By Defendants:




36. The counterfeit packaging used by Defendants reproduced, counterfeited, copied, and/or colorably imitated the Fitbit Marks and displayed spurious designations that are identical with, or substantially indistinguishable from, the Fitbit Marks. Defendants have applied their reproductions, counterfeits, copies, and/or colorable imitations of the Fitbit Marks to labels and/or packaging intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of Fitbit products that are themselves not genuine within the meaning of the Lanham Act. Instead, these products were designated to be scrapped and/or recycled and were never intended to be resold to consumers. Defendants' counterfeit packaging also referred the consumer to Fitbit.com to setup the product to further confuse and deceive the consumer into

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  believing that Fitbit authorized, was affiliated with, and/or approved the sale of this non-genuine

2  product to consumers.

3       37.     Defendants have infringed, and are threatening to continue to infringe, Fitbit's

4  trademark rights by selling non-genuine "Fitbit" products, that are materially different from

5  genuine Fitbit products.  Moreover, Defendants have sold those products in counterfeit "Fitbit"

6  packaging that mimics Fitbit's federally registered trademarks to mislead consumers into believing

7  that the products are authorized and genuine.  Reselling products that had been designated for

8  scrap and/or recycling has undermined, and continues to undermine, Fitbit's quality control

9  processes and usurped Fitbit's right to control the quality of products destined for members of the

10  consuming public.  Because these products were determined not to meet up to Fitbit's quality

11  standards, and as a result were designated to be scrapped and/or recycled, there can be no doubt

12  that the products are materially different from genuine products.  Indeed, such products that were

13  removed from Fitbit's quality control processes without authorization themselves are counterfeit

14  within the definition of the Lanham Act.

15      **E.**    **DEFENDANTS' MISLEADING AND INFERIOR WARRANTY**

16       38.     In addition, Defendants included a "Warranty Card" in their product shipments that

17  referred the customer to the Fitbit website to download a product manual, and further misled the

18  consumer into believing that Fitbit authorized, was affiliated with, and/or approved the sale of this

19  non-genuine product to consumers by failing to state that there is no warranty provided by Fitbit

20  for these products:



39.     Thus, Defendants sold these scrap products without even providing a disclaimer, advising consumers that they are not Fitbit authorized retailers, and that the products are not eligible for Fitbit warranty support, as required for example by Cal. Civ. Code Section 1797.81. This failure dramatically increased the likelihood, confirmed in the consumer reviews of Defendants' product sales, that their customers would be confused about Fitbit's support of the warranty, further damaging the consumer experience and increasing the damage to Fitbit's brand.

40.     As such, Defendant's inferior warranty coverage is another material difference sufficient by itself to render the product not genuine under the Lanham Act.  Defendants' warranty is for 60 days but only covers replacement of broken units.  On the other hand, Fitbit has a 45 day Satisfaction Guaranteed Return Policy that allows the consumer to return a product for any reason for 45 days and allows the return of defective products for a year in the United States.  *See* Fitbit's Warranty and Return Policy, available at https://www.fitbit.com/legal/returns-and-warranty.

**F.      CONSUMER CONFUSION CAUSED BY DEFENDANTS**

41.     Despite being put on notice by Fitbit in 2015, Defendants continued to conspicuously use and/or counterfeit the Fitbit Marks and trade name throughout their advertising through their Established Distribution Channels, and on the packaging and warranty card for the non-genuine "Fitbit" products they sell.  Fitbit is informed and believes, and thereon alleges, that Defendants did so intentionally and willfully to increase their sales by causing consumers to believe that their product sales and warranty are somehow associated with, affiliated with, and authorized by, Fitbit, when they are not and when the products themselves are non-genuine and/or are counterfeit within the meaning of the Lanham Act.

42.     Not only are consumers *likely* to be confused by Defendants' use of the Fitbit Marks, but Fitbit has found significant evidence of *actual* consumer confusion and brand/reputational harm to Fitbit from consumers who have recently complained about the products sold by Defendants.

43.     The harm to Fitbit's brand and goodwill caused by Defendants' conduct is ongoing, as the negative reviews continue to mount, and confirm the confusion and disappointment caused to consumers due to the inferior quality of the product and warranty sold by Defendants:

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## Customer Reviews



Fitbit Flex/Charge/Charge HR or Surge Wireless Activity Trackers (Third Party Refurbished)

★★★★☆ (5,557 ratings)

Rate first, then write a review.

★★★★★

★★★★★ **Bliss A.**                                                           Dec 30th, 2016

If I could give this product zero stars I would. I've had the fit bit flex for less than six months and it no longer tracks any steps. It is fully charged although charging it is a hassle as I have to put a rubber band around the charger and the battery in order for the connectors to connect.

Was this helpful?  [ Yes ]  [ No ]

★★★★★ **Scott N.**                                                           Dec 28th, 2016

Bought 1 Flex and it will not sync to phone or laptop. Now the warranty is invalid since it was purchased over 60 days before Christmas. DO NOT BUY. AVOID SELLER!

Was this helpful?  [ Yes ]  [ No ]

44.     Another recent consumer review for Defendants' "Fitbit" sales further exemplifies the actual customer confusion, as she relays her and her daughter's disappointment after calling Fitbit for customer service and warranty support:

★★★★★ **Stephanie E.**                                                       Dec 23rd, 2016

I bought this as a Christmas gift for my daughter, when she opened it she was very excited only to try to start it and find that it is broken, she called fitbit and they explained that it already had an account associated to it and there was nothing they could do for her and the warranty was NO GOOD , because of the account on it from over a year ago. Don't waste your money.

45.     The scathing reviews and resulting harm to Fitbit's brand and reputation go on and on, as Defendants surely knew would occur when they decided to sell scrap products that were never intended to be resold to consumers in the first place:

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

★★★★★ Kristdel C.                                                                Dec 20th, 2016

Bought two Fitbit flex bracelets, only one would work/connect to app. Very poor product.

Was this helpful?        Yes                No

★★★★★ Kimberley R.                                                              Dec 3rd, 2016

I bought two Fitbit's and the one I use stopped working after vibrating non-stop on my wrist for 5 minutes.  The one my daughter uses needs charging every day.  Note to self..... never buy a refurbished Fitbit again!

Was this helpful?        Yes                No

1 person found this review helpful

★★★★★ angela s.                                                                 Nov 25th, 2016

The Fitbit flex came with no directions. It does not work properly and is a piece of junk.  I would like to return it but don't know how

Was this helpful?        Yes                No

★★★★★ Frangca P.                                                                Nov 22nd, 2016

This fitbit worked fine for the first two months, but I started to get issues.  It was fully charged, but was unresponsive.  I reset this fitbit several times and wasn't able to address this issue.  Because I was outside of the time frame for returns, there was nothing Groupon could do to help me. I just ended up wasting my money on this product.

Was this helpful?        Yes                No

2 people found this review helpful

★★★★★ Karen F.                                                                  Nov 21st, 2016

would not hold a charge for even a 12 hour period. was a waste of my time and money

Was this helpful?        Yes                No

★★★★★ Rasheda T.                                                               Nov 20th, 2016

I will be returning item. FITBIT say's I've walked my 10,000 steps even though I've been sleeping

Was this helpful?        Yes                No

46.     Accordingly, Defendants' use of the Fitbit Marks has caused actual confusion or mistake, and deceived consumers into believing there is an affiliation, connection, or association between Fitbit and Defendants, and has confused members of the public as to the origin, sponsorship, authorization, and/or approval by Fitbit of Defendants' "Fitbit" branded product sales.  In addition to monetary damages to Fitbit, Defendants' unlawful actions have caused irreparable harm to Fitbit's brand and reputation, as to which there is no adequate remedy at law.

47.     Fitbit requested that Defendants allow Fitbit to inspect their inventory to ensure that Defendants do not resell any more scrap products, but Defendants rejected that request.  They also have impeded Fitbit's attempts to ensure that Defendants' product returns from their Established Distribution Channels do not go out to members of the consuming public yet again.

48.     Indeed, Fitbit is informed and believes, and thereon alleges, that thousands of

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1 consumers who purchased these scrap products through the Groupon platform have already

2 returned them to Groupon.  Though Fitbit requested to receive and inspect those rejected products,

3 Groupon recently returned them back to Defendants.  Accordingly, in addition to all other relief

4 requested, good cause and exigent circumstances exist here to order temporary and preliminary

5 injunctive relief to stop Defendants from reselling any "Fitbit" branded products in their

6 inventory, including the thousands of recently returned products from Groupon, without prior

7 inspection and approval by Fitbit to ensure Defendants sell no more scrap products to members of

8 the consuming public.

9 **FITBIT'S CLAIMS FOR RELIEF**

10 **FIRST CLAIM FOR RELIEF**

11 **(Federal Trademark Counterfeiting and Infringement; 15 U.S.C. § 1114)**

12     49.    Fitbit incorporates the preceding paragraphs of this Complaint as if fully set forth

13 herein.

14     50.    The Fitbit Marks are valid, protectable trademarks that have been registered as

15 marks on the principal register in the United States Patent and Trademark Office.

16     51.    Fitbit is the owner and registrant of the Fitbit Marks.

17     52.    As described in more detail above, Defendants have used and counterfeited the

18 Fitbit Marks in connection with the marketing, promotion, and sale of their goods and services

19 without Fitbit's consent, in a manner that is likely to cause, and has actually caused, confusion

20 and/or mistake, or that has deceived members of the consuming public and/or the trade.  Indeed,

21 Defendants counterfeiting and infringing activities are likely to cause and are actually causing

22 confusion, mistake, and deception among members of the trade and the general consuming public

23 as to the origin, sponsorship, and quality of Defendants' infringing products, counterfeit

24 packaging, inferior warranty, and other related commercial activities.  As of the filing of this

25 Complaint, Defendants are continuing to infringe the Fitbit Marks unabated as alleged further

26 above.

27     53.    Defendants' infringement of the Fitbit Marks is willful.

28     54.    Fitbit has been, and continues to be, damaged by Defendants' infringement,

1  including by suffering irreparable harm through the diminution of trust and goodwill among Fitbit

2  consumers and members of the general consuming public and the trade.

3       55.    As a result of Defendants' infringement of the Fitbit Marks, Fitbit is entitled to an

4  injunction, as set forth below, and an order of destruction of all of Defendants' infringing

5  materials.

6       56.    Fitbit is entitled to an injunction against Defendants, as well as all monetary relief

7  and other remedies available under the Lanham Act, including but not limited to trebled damages

8  and/or actual profits, reasonable attorney's fees, costs and prejudgment interest, and/or statutory

9  damages.

**SECOND CLAIM FOR RELIEF**

**(Federal Trademark Dilution; 15 U.S.C. § 1125)**

12       57.    Fitbit incorporates the preceding paragraphs of this Complaint as if fully set forth

13  herein.

14       58.    The Fitbit Marks are famous trademarks within the meaning of the Anti-Dilution

15  Act, 15 U.S.C. § 1125(c).

16       59.    As a result of Defendants' use and counterfeiting of the Fitbit Marks to identify

17  inferior products and warranties with the Fitbit Marks, as alleged further above, causes significant

18  harm to Fitbit's brand and reputation.

19       60.    Defendants' acts have diluted and will continue to dilute the distinctive nature of

20  the Fitbit Marks through blurring and tarnishment, in violation of 15 U.S.C. § 1125(c).

21       61.    The distinctive nature and reputation of the Fitbit Marks is extremely valuable, and

22  Fitbit is suffering and will continue to suffer irreparable harm, blurring, and tarnishment of the

23  Fitbit Marks if Defendants' wrongful conduct is allowed to continue.

24       62.    The dilution of the Fitbit Marks will likely continue unless the Court orders

25  injunctive relief against Defendants.

26       63.    Fitbit is entitled to an injunction against Defendants, as well as all monetary relief

27  and other remedies available under the Lanham Act, including but not limited to trebled damages

28  and/or actual profits, reasonable attorney's fees, costs and prejudgment interest, and/or statutory

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    damages.

2                          **THIRD CLAIM FOR RELIEF**

3              **(Federal Unfair Competition; 15 U.S.C. § 1125)**

4        64.    Fitbit incorporates the preceding paragraphs of this Complaint as if fully set forth

5    herein.

6        65.    The Fitbit Marks are valid, protectable trademarks that have been registered as

7    marks on the principal register in the United States Patent and Trademark Office.

8        66.    Fitbit is the owner and registrant of the Fitbit Marks.

9        67.    Fitbit operates under and uses the trade name "Fitbit" in connection with its

10   products and services.

11       68.    Defendants have made commercial use of and counterfeited the Fitbit Marks and

12   Fitbit's trade name.

13       69.    Defendants' counterfeiting and infringing activities, and related false descriptions

14   and representations as to origin and quality of their product sales, are likely to cause, and are

15   actually causing, confusion, mistake, and/or deception among members of the consuming public

16   and members of the trade.  These members of the consuming public and members of the trade

17   have been, and will continue to be, misled into believing that there is an affiliation, connection, or

18   association between Fitbit and Defendants, and/or that they have been, or will be, misled as to the

19   origin, sponsorship, or approval of Defendants' sale of inferior scrap products, inferior warranty,

20   and other related commercial activities.

21       70.    Fitbit has not consented to Defendants' use of the Fitbit Marks or Fitbit trade name.

22       71.    Defendants' unauthorized use of the Fitbit Marks and Fitbit trade name was willful.

23       72.    Defendants' acts constitute false statements in connection with products and/or

24   services distributed in interstate commerce, in violation of Section 43(a) of the Lanham Act, 15

25   U.S.C. § 1125(a).

26       73.    Defendants' acts have caused and are continuing to cause irreparable injury to

27   Fitbit's brand, goodwill, and reputation.

28       74.    An award of monetary damages alone cannot fully compensate Fitbit for its injuries

1 and Fitbit lacks an adequate remedy at law.

2     75.    Fitbit is entitled to an injunction against Defendants, as well as all monetary relief

3 and other remedies available under the Lanham Act, including but not limited to trebled damages

4 and/or actual profits, reasonable attorney's fees, costs and prejudgment interest, and/or statutory

5 damages.

6 **FOURTH CLAIM FOR RELIEF**

7 **(California Unfair Competition; Cal. Bus. Prof. Code §§ 17200, *et seq.*)**

8     76.    Fitbit incorporates the preceding paragraphs of this Complaint as if fully set forth

9 herein.

10     77.    Defendants have engaged in unlawful and unfair business acts or practices, as

11 defined by Cal. Bus. Prof. Code §§ 17200, *et seq.*, by committing the illegal acts and practices as

12 alleged herein, all in an effort to gain an unfair competitive advantage over Fitbit.

13     78.    Defendants' misconduct was unlawful because, as described herein, their

14 misconduct constitutes violations of numerous state and federal statutes, including but not limited

15 to Cal. Civ. Code Section 1797.81, state false advertising laws such as Cal. Bus. Prof. Code §

16 17500, as well as the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and the Federal Trade

17 Commission Act, 15 U.S.C. § 45.  Further, their misconduct was unfair in that Defendants'

18 actions, as described herein, significantly threatened and/or harmed competition by selling scrap

19 products diverted from Fitbit's supply chain to undercut the legal market for genuine Fitbit

20 products.

21     79.    These unlawful and unfair business acts and/or practices were committed pursuant

22 to Defendants' business marketing, promotional, and sales efforts in relation to the Fitbit Marks

23 and the Fitbit website.

24     80.    As a direct and proximate result of Defendants' unlawful and unfair business

25 practices, Fitbit has lost money, and has suffered irreparable injury to its brand, business

26 reputation, and goodwill.  As such, Fitbit's remedy at law is not adequate to compensate for the

27 injuries inflicted by Defendants.  Accordingly, Fitbit is entitled to temporary, preliminary, and

28 permanent injunctive relief against Defendants, in addition to restitution in an amount to be proven

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  at trial.

2  <u>**PRAYER FOR RELIEF**</u>

3  **WHEREFORE,** Fitbit respectfully prays that the Court enter judgment as follows:

4  1.  That Defendants infringed the Fitbit Marks, engaged in trademark infringement and

5  counterfeiting, engaged in trademark dilution, and engaged in unfair competition through their use

6  and counterfeiting of the Fitbit Marks and related product sales;

7  2.  That Defendants' trademark infringement was knowing and willful and committed

8  with bad faith and intent to deceive and that this case is exceptional under 15 U.S.C. § 1117(a);

9  3.  That the Court enter an order enjoining and restraining Defendants and all persons

10  or entities acting as agents of or in concert with Defendants, during the pendency of this action and

11  thereafter perpetually, from infringing, counterfeiting, or diluting the Fitbit Marks in any way,

12  including but not limited to the resale of any scrap products in Defendants' inventory;

13  4.  That the Court enter an order impounding and delivering to Fitbit for ultimate

14  destruction any infringing and/or counterfeit "Fitbit" branded products, packaging, or other

15  collateral in Defendants' possession, custody, or control;

16  5.  That the Court enter an order directing Defendants to send a Plaintiff-approved

17  notice to any customer who purchased any infringing or counterfeit "Fitbit" branded product from

18  Defendants, informing the customer that the sale of the product violated Federal trademark and

19  counterfeiting laws, and that Defendants will refund the money paid by the consumer immediately

20  upon request and return of the product, with any such product returns going directly to Fitbit or its

21  counsel for ultimate destruction;

22  6.  That the Court enter an order requiring Defendants to account to and pay Fitbit for

23  all profits and damages resulting from Defendants' infringement, counterfeiting activities and

24  Federal unfair competition;

25  7.  That Plaintiff be awarded treble damages to the fullest extent available under the

26  law;

27  8.  That Plaintiff be awarded statutory damages to the extent elected and to the fullest

28  extent available under the law;

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    9.    That Plaintiff be awarded restitution from Defendants to the fullest extent available

2  under the law;

3    10.    That Plaintiff be awarded costs, reasonable attorney's fees, and pre-judgment

4  interest on its judgment amount to the fullest extent available under the law; and,

5    11.    That Plaintiff be granted such other and further relief as the Court deems just and

6  proper.

7  DATED: January 6, 2017                SIDEMAN & BANCROFT LLP

8

9                                        By:   /s/ Zachary J. Alinder

10                                            Zachary J. Alinder
                                             Attorneys for Plaintiff
11                                            FITBIT, INC.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

## JURY DEMAND

2      Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Plaintiff FITBIT, INC. hereby

3 demands trial by a jury on all issues herein so triable.

4 DATED: January 6, 2017              SIDEMAN & BANCROFT LLP

5

6                                By:   /s/ Zachary J. Alinder
                                       Zachary J. Alinder
7                                      Attorneys for Plaintiff
                                       FITBIT, INC.

8

9

10

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28