UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITBIT, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>LAGUNA 2, LLC, et al.,<br><br>    Defendants. | Case No. 17-cv-00079-EMC<br><br>**ORDER DEFERRING DEFENDANTS' MOTION TO DISMISS OR TRANSFER; GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; GRANTING DEFENDANTS' MOTION TO FILE UNDER SEAL; AND DEFERRING RULING ON PLAINTIFF'S MOTION TO FILE UNDER SEAL**<br><br>Docket Nos. 42, 46, 50 |

Currently pending before the Court are several motions: (1) the L2 Defendants' motion to dismiss or transfer; (2) Fitbit's motion for a preliminary injunction; (3) the L2 Defendants' motion to file under seal; and (4) Fitbit's motion to file under seal. The Court held a hearing on the motions on February 23, 2017. This order memorializes the Court's oral rulings made at the hearing and provides additional analysis, as necessary.

A.    <u>L2 Defendants' Motion to Dismiss or Transfer</u>

The L2 Defendants argue for dismissal of the instant case or, in the alternative, transfer because of the pending action in the District of New Jersey. The requested relief is premature and will be deferred. The New Jersey court has pending before it a motion to dismiss for lack of personal jurisdiction. If the New Jersey court concludes that it lacks personal jurisdiction over Fitbit (the defendant in that case), then that action would be moot. On the other hand, if the New Jersey court finds it has personal jurisdiction, it may address the propriety of transferring this case to New Jersey.

1    The decision whether to transfer this case should be made by the New Jersey court under
2 the first-to-file rule.  The New Jersey action was filed first, and there is an overlap in parties and
3 issues; both suits arise out of L2's allegedly unauthorized sale of Fitbit products.  *See generally*
4 *Carefusion 202, Inc. v. Tres Tech Corp.*, No. C-13-2194 EMC, 2013 U.S. Dist. LEXIS 109146, at
5 *1-2 (N.D. Cal. Aug. 2, 2013) (discussing factors considered in deciding whether to apply the
6 first-to-file rule).  To the extent Fitbit protests that there are exceptions to the first-to-file rule that
7 have viability here (*i.e.*, convenience considerations weigh against transfer and L2's lawsuit in
8 New Jersey must be deemed an anticipatory action), those arguments should be presented to the
9 New Jersey court (assuming it finds personal jurisdiction), and not this Court.  *See id.* at *4-5
10 (noting that arguments regarding convenience are to be addressed by the court in the first-filed
11 action; then concluding that exceptions to the first-to-file rule – *i.e.*, bad faith, anticipatory suit,
12 and/or forum shopping – should also be entertained by the first court because "[i]t would
13 contravene the purpose of the first-to-file rule (i.e., to avoid inconsistent results and promote
14 efficiency) for the second court to make a ruling on whether an exception applies" and "there is
15 nothing to indicate that this Court is in a better position than the [first] court to consider the
16 exceptions").

B.    Fitbit's Motion for a Preliminary Injunction

18    To the extent the L2 Defendants suggest that Fitbit should file a counterclaim and have the
19 New Jersey court decide the issue of temporary/preliminary injunctive relief, the Court does not
20 agree.  While the jurisdictional challenge is pending, Fitbit risks waiver should it now assert a
21 counterclaim in New Jersey.  *See, e.g.*, *Blockowicz v. Williams*, 630 F.3d 563, 566 (7th Cir. 2010)
22 (noting that the defense is waived "if the objecting party proceeds to litigate the case on its
23 merits"); *Lakeview Nerorehab. Ctr., Inc. v. Care Realty, LLC*, No. 07-cv-303-SM, 2008 U.S. Dist.
24 LEXIS 42315, at *9 (D.N.H. May 28, 2008) (stating that, by requesting affirmative relief,
25 defendants submitted themselves to the jurisdiction of the court); *Mallard v. Mallard*, No. 90 C
26 3335, 1992 U.S. Dist. LEXIS 2346, at *14-15 (N.D. Ill. Mar. 3, 1992) (distinguishing a case
27 because, there, the defendants asked for and received preliminary injunctive relief by obtaining
28 injunctions against the plaintiffs).

2

As for the merits, previously, the Court issued a temporary restraining order ("TRO") and then expanded the scope of the TRO. *See* Docket Nos. 24, 31, 41 (orders and minutes[1]). In advance of the February 23 hearing as to whether, in effect, the TRO should be converted into a preliminary injunction, both parties submitted supplemental papers and evidence in support thereof. *See* Docket No. 46 (L2 Defendants' supplemental papers and accompanying submissions); Docket No. 50 (Fitbit's responsive papers and accompanying submissions).

Having considered both the papers and evidence previously submitted and the newly submitted papers and evidence, the Court concludes that a preliminary injunction, consisting of the same terms as the TRO, is warranted. Contrary to what the L2 Defendants suggested at the hearing, Fitbit need not present a "buttoned-up" case or show entitlement to summary judgment in order to obtain preliminary injunctive relief.[2] Relief is appropriate because there are serious questions going to the merits – indeed a reasonable likelihood of success – and the balance of hardships tips sharply in Fitbit's favor.

More specifically, there are serious questions going to the merits, particularly to the extent L2 is selling scrap product, because, if the product is in fact scrap, there is arguably no authorized first sale which would render the first sale doctrine inapplicable. *Cf. Grateful Palate Inc. v. Joshua Tree Imps., LLC*, 220 Fed. Appx. 635, 637 (9th Cir. 2007) (stating that, "[u]nder the first sale doctrine, the mark holder may ordinarily control the initial sale of the product, and a product sold without the authorization of the mark holder is generally deemed non-genuine"). Furthermore, if the product is in fact scrap, it could well be materially different (although L2 disputes this fact) which would also render the first sale doctrine inapplicable. *See SoftMan Prods. Co. v. Adobe Sys.*, 171 F. Supp. 2d 1075, 1091 (C.D. Cal. 2001) (stating that "[a] materially different product is not genuine"); *see also Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1025 (C.D. Cal. 2011) (noting that "[m]aterial differences can relate to a product's

---

[1] The minutes erroneously stated that the Court would issue a detailed order.

[2] The L2 Defendants have not really objected to preliminary injunctive relief to the extent it matches the original scope of the TRO issued by the Court. The L2 Defendants' real beef is with the expanded scope of the TRO – *i.e.*, the screening requirement.

quality control standards"); *Idaho Potato Comm'n v. G&T Terminal Pkg., Inc.*, 425 F.3d 708, 721-22 (9th Cir. 2005) (stating that "many cases have found a likelihood of confusion where a trademark owner was prevented from exercising quality control over the merchandise bearing its mark" and that "'the actual quality of the goods is irrelevant'" as "'it is the control of quality that a trademark holder is entitled to maintain'").

The balance of hardships also weighs in favor of Fitbit – particularly if the product being sold by L2 is scrap. Although L2 claims hardship if temporary injunctive relief were to be ordered, it is not clear from the record that Fitbit product is the only kind of product that L2 sells. Moreover, the relief being ordered by the Court is limited in nature which lessens the hardship on L2; it can sell the Fitbit products so long as they were not designated as scrap and meet certain labeling conditions. Finally, it is worth noting – as Fitbit points out – that after the Court expanded the scope of the TRO to include the screening requirement, L2 apparently never asked Fitbit to screen any of the product it wanted to sell. This cuts against L2's claim of injury.

For the foregoing reasons, the Court converts the TRO previously issued (including the expanded scope) into a preliminary injunction. As the Court stated at the hearing, this does not preclude the L2 Defendants from asking for modification and/or termination of the preliminary injunction is there is a legal and evidentiary basis for seeking such relief; nor is this order intended to bind the New Jersey court in any way should the case be transferred.

C. Confidentiality Designations and Protective Order

The Court grants the L2 Defendants' motion to file under seal. There is a basis to seal because of the confidential nature of the statements of work. The Court's ruling does not address the potential dispute between the parties as to whether the statements of work should be designated "attorney's eyes only" or "regular" confidential.

The Court defers ruling on Fitbit's motion to file under seal as it is still waiting for a supporting declaration from the L2 Defendants. To the extent Fitbit has claimed confidentiality over some of the information at issue, the Court is inclined to grant the motion, with one exception. More specifically, it is hard pressed to understand why Exhibit E to the Bonham declaration is confidential. The explanation provided by Fitbit to date is not satisfactory.

Accordingly, to the extent Fitbit, in good faith, believes that Exhibit E should be filed under seal, the Court orders it to file a more specific declaration **within two days of the date of this order**.

Finally, the parties shall meet and confer to reach agreement on the terms of a protective order. If there is a dispute about the terms, the parties shall file a joint brief addressing what terms are in dispute and providing each side's proposed language as to the disputed terms. The parties shall file the proposed protective order or, if there are disputed terms, a joint brief **within one week of the date of this order**.

D.  Discovery

As discussed at the hearing, as a general matter, the Court shall await the New Jersey court's ruling on Fitbit's motion to dismiss for lack of personal jurisdiction before it decides how this case should proceed. Notwithstanding such, as discussed at the hearing, the Court shall permit narrowly tailored, focused discovery – *e.g.*, discovery directed as to who is the supplier or distributor of the product at issue and whether a sale by a third party of refurbished products was authorized by Fitbit.

E.  Fitbit's Motion for a Temporary Restraining Order Against the CR Defendants

To the extent Fitbit seeks any temporary or preliminary injunctive relief against the Cali Resources Defendants, it shall file a motion for such relief by March 2, 2017. The Cali Resources Defendants shall file their opposition to the motion by March 16, 2017. Absent an order of the Court, there shall be no reply. The motion shall be heard on **March 29, 2017, at 10:30 a.m.**

**Fitbit shall serve a copy of this order on the Cali Resources Defendants within two days of the date of this order. In addition, Fitbit shall immediately give the Cali Resources Defendants telephonic and email notice of the anticipated motion for injunctive relief.**

This order disposes of Docket Nos. 42 and 46.

**IT IS SO ORDERED**.

Dated: February 24, 2017

_____
EDWARD M. CHEN
United States District Judge