UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITBIT, INC., <br> Plaintiff, <br> v. <br> LAGUNA 2, LLC, et al., <br> Defendants. | Case No. 17-cv-00079-EMC <br><br> **ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS** <br><br> Docket Nos. 99, 101 |

Currently pending before the Court are two motions to dismiss, one filed by the Cali Defendants and Great Value and the other filed by the L2 Defendants. The Court held a hearing on the motions on September 28, 2017. This order memorializes the Court's rulings made at the hearing and provides additional analysis, as necessary.

Both motions to dismiss are **DENIED**.

As to the Cali Defendants and Great Value's motion to dismiss, the Court finds that there are sufficient allegations to support a fraud claim against the Cali Defendants – in particular, allegations as to why the Cali Defendants knew or should have known that BCS was defrauding Fitbit.

As for the trademark infringement and related claims, the Cali Defendants and Great Value assert a first sale defense. More specifically, they take the position that an authorized first sale took place when Fitbit or an authorized reseller sold the Fitbit product to a consumer, even though the consumer ultimately returned the product to Fitbit. While the Court does not, at this juncture, foreclose this first sale argument, it has some doubts about the theory; the Cali Defendants and Great Value have not cited any case law finding the first sale doctrine applies in this particular context. *Compare RFA Brands, LLC v. Beauvais*, No. 13-14615, 2014 U.S. Dist. LEXIS 181781,

1   at *22-23 (E.D. Mich. Dec. 23, 2014) (report and recommendation) (in a trademark case, holding that defendant failed to establish that first sales of products at issue were authorized for purposes of the first sale defense; noting that, at best, defendant was speculating as to the origin of the products and further "offer[ed] no rebuttal to plaintiff's proof that the products were returned product not to be resold"), *adopted by* 2015 U.S. Dist. LEXIS 14914 (E.D. Mich. Feb. 9, 2015). Therefore, the Court will not grant the motion to dismiss. Furthermore, even if a first sale had taken place, Fitbit has made sufficient allegations that there are material differences which would provide an exception to the first sale doctrine. This precludes dismissal at the 12(b)(6) phase of proceedings.

As for the L2 Defendants' motion to dismiss, the L2 Defendants have also asserted the first sale defense but they claim that the first sale took place when Fitbit gave Fitbit product to the BCS Defendants for destruction and/or recycling. However, there are at the very least questions of fact as to whether Fitbit actually sold Fitbit product to BCS (*i.e.*, transferred title) or whether the relationship between Fitbit and BCS was more like a bailment relationship or a vendor services relationship. *See, e.g.*, *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1107-08 (9th Cir. 2010) (in the context of copyright infringement, stating that "[t]he first sale doctrine does not apply to a person who possesses a copy of the copyrighted work without owning it, such as a licensee"; citing a Supreme Court case for the proposition that "'[t]he first sale doctrine would not provide a defense to . . . any non-owner such as a bailee, a licensee, a consignee, or one whose possession of the copy was unlawful'"); *Little, Brown & Co. v. American Paper Recycling Corp.*, 824 F. Supp. 11, 13-16 (D. Mass. 1993) (in a copyright infringement case, finding a bailment for mutual benefit and not an outright sale, thus making the first sale doctrine inapplicable; the plaintiff was a publishing company, and it had an arrangement with the defendant-company under which the latter would pick up books from the plaintiff for purposes of recycling such books). And even if there were a sale, it is unclear whether the first sale doctrine applies to unauthorized sales. *Compare FURminator, Inc. v. Kirk Weaver Enterprises, Inc.*, 545 F. Supp. 2d 685, 690 (N.D. Ohio 2008) (in a trademark infringement case, noting that "[g]oods are not genuine goods until their sale is authorized by the trademark owner" and then stating that "there is no dispute that [the

2

plaintiff] did not authorize or approve the sale of the tools at issue" because the plaintiff determined that certain goods provided by the manufacturer did not meet its quality control standards and therefore it would not authorize the tools for sale but rather took steps to implement their destruction), *with McCarthy v. Fuller*, No. 1:08-cv-994-WTL-DML, 2013 U.S. Dist. LEXIS 162826, at *4-6 (S.D. Ind. Nov. 15, 2013) (rejecting plaintiff's contention that the first sale "doctrine does not apply in situations in which the trademarked goods in question were not sold by the trademark holder at all, but rather were stolen or otherwise obtained illegally"; because the goal of trademark law is to protect against consumer confusion, "'a consumer purchasing genuine goods receives exactly what the customer expects to receive: genuine goods,'" and so, "with regard to the sale of the Medallions that the Counterclaim Defendants obtained from [the counterclaim plaintiff] – regardless of how they were obtained – those who purchased the Medallions received a genuine Medallion, not a substitute"). In addition, similar to above, there are questions of fact that cannot be resolved at the 12(b)(6) juncture because there are sufficient allegations in the complaint of material differences with respect to the Fitbit refurbished product being sold by the L2 Defendants.

Finally, as to both sets of defendants, the Court notes that the first sale defense would not dispose of all trademark infringement and related claims against them because Fitbit has also made allegations that both sets of defendants improperly suggested that Fitbit authorized the sale of the goods at issue through, *e.g.*, packaging, advertising, and misleading warranties.

Accordingly, both the Cali Defendants/Great Value and the L2 Defendants' motions to dismiss are denied.

This order disposes of Docket Nos. 99 and 101.

**IT IS SO ORDERED**.

Dated: September 29, 2017

_____
EDWARD M. CHEN
United States District Judge

3