UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITBIT, INC., <br>    Plaintiff, <br>  v. <br> LAGUNA 2, LLC, et al., <br>    Defendants. | Case No. 17-cv-00079-EMC <br><br> **ORDER DENYING DEFENDANTS' MOTION TO MODIFY PRELIMINARY INJUNCTION** <br><br> Docket No. 137 |

  Plaintiff Fitbit, Inc. has filed suit against multiple entities and persons, alleging, *inter alia*, that they have unlawfully infringed on Fitbit's trademarks through the sale of "scrap" Fitbit product. The primary alleged wrongdoers are the BCS Defendants. According to Fitbit, it hired the BCS Defendants to take product designated "scrap" by Fitbit and recycle and/or destroy the product; however, the BCS Defendants did not recycle and/or destroy the scrap product but rather resold the product to the Cali Defendants who then resold the product (after having it refurbished) to, *e.g.*, Great Value (which is affiliated with the Cali Defendants) and the L2 Defendants. These entities then offered the refurbished product for sale to the public.

  Currently pending before the Court is a motion filed by the Cali Defendants and Great Value. For convenience, the Court refers to these defendants collectively as "Defendants." Defendants have moved for a modification of the preliminary injunction in this case. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other evidence of record in this case, the Court **DENIES** Defendants' motion.

## I.  FACTUAL & PROCEDURAL BACKGOUND

  Fitbit initiated this lawsuit in January 2017. At first, it sued only the L2 Defendants who had been selling Fitbit scrap product on, *e.g.*, the Groupon and eBay websites. *See* Docket No. 1

(complaint). Fitbit moved for a TRO against the L2 Defendants. *See* Docket No. 12 (motion). In opposing the motion, the L2 Defendants identified Cali as their supplier. *See* Docket No. 19-1 (Blank Decl., Ex. A) (letter from Cali to L2, dated November 8, 2016) (stating that "[w]e are not at liberty to provide our supply chain but we would never, ever, purchase from a supplier that did not have the legal right to sell to us").

On January 18, 2017, the Court granted in part and deferred in part the motion for a TRO. *See* Docket No. 24 (order). In its order, the Court noted that L2 "appeared to have taken steps to indicate that the refurbished product it sells are *not* being sold by Fitbit (*e.g.*, changing the packaging for the refurbished product and the wording on the accompanying warranty card)." Docket No. 24 (Order at 2). However,

> there is arguably still some lack of clarity, particularly with respect to the eBay's website description of the goods being sold by L2. Despite the disclaimers, it is not abundantly clear that there is no affiliation between the seller and Fitbit and that the items are not refurbished by Fitbit [or] warranted by Fitbit.

Docket No. 24 (Order at 2). The Court thus ordered L2 to "revise the description it provides to eBay for use on the eBay website" as well as to other retailers. Docket No. 24 (Order at 2); *see also* Docket No. 31 (order) (adopting language provided by the parties). The Court also deferred the TRO motion to give Fitbit an opportunity to make an evidentiary showing to support further temporary injunctive relief. *See* Docket No. 24 (Order at 3).

In the meantime, Fitbit filed a first amended complaint ("FAC"), naming the Cali Defendants for the first time. *See* Docket No. 36 (FAC).

Subsequently, the Court held the continued hearing on Fitbit's TRO motion against the L2 Defendants. At the hearing, the Court ordered that the previous TRO terms remain in place and also granted Fitbit additional relief:

> [A]ny sale of goods in question must be screened by Fitbit first; **no re-sale during time of TRO if the items had previously been designated as scrap**, nor shall any counterfeit charging cable be sold by [L2]. Fitbit shall expeditiously review any merchandise [L2] seeks to clear. Fitbit shall provide [L2] with documentation of such.

Docket No. 41 (minutes) (emphasis added). The Court also set a hearing for a preliminary

2

1 injunction motion.

2 On February 24, 2017, the Court granted the motion for a preliminary injunction. The terms of the TRO were converted into a preliminary injunction. *See* Docket No. 52 (Order at 3). The Court noted, *inter alia*, that there were "serious questions going to the merits, particularly to the extent L2 is selling scrap product, because, if the product is in fact scrap, there is arguably no authorized first sale which would render the first sale doctrine inapplicable." Docket No. 52 (Order at 3). The Court added: "Furthermore, if the product is in fact scrap, it could well be materially different (although L2 disputes this fact) which would also render the first sale doctrine inapplicable." Docket No. 52 (Order at 3). Finally, because the preliminary injunction was as to the L2 Defendants only, the Court set a briefing and hearing schedule for a motion for a TRO with respect to the Cali Defendants. *See* Docket No. 52 (Order at 5).

Several days later, on February 28, 2017, Fitbit and the Cali Defendants stipulated to a preliminary injunction with the same terms as the preliminary injunction applicable to the L2 Defendants. *See* Docket No. 54 (stipulation). The Court entered the stipulation as an order on March 1, 2017. *See* Docket No. 56 (order).

The preliminary injunction as to the Cali Defendants lasted for almost nine months before the Cali Defendants – and Great Value – brought the pending motion for a modification of the preliminary injunction.

## II. DISCUSSION

A. Modification Sought

As reflected in their proposed order, Defendants want to modify the preliminary injunction (1) to eliminate the use of the word "scrap" and (2) to require Fitbit to post a bond in the amount of $1 million.[1] The specific language proposed by Defendants is below:

> The only products Defendants may not sell are those that are materially physically different from original products. Plaintiff will have two days to inspect any products Defendants Cali or L2 propose to sell to determine if said products are materially physically different from the original products. Should Plaintiff

---

[1] *See* Kelvin Decl. ¶ 13 ("The total present and future damage to Cali from the loss of value of its products during the pendency of this action is in excess of $1,000,000.").

3

unreasonably assert material physical differences, it will be liable for any damages caused thereby.

Docket No. 137-1 (proposed order).

For purposes of the instant motion, the Court proceeds with the assumption that Defendants would be willing to use the phrase "materially different" instead of "materially *physically* different." This is because the case law refers to the former and not the latter. Also, physical difference could be interpreted to mean a cosmetic difference only – and not, *e.g.*, a difference in function.

B. <u>Legal Standard for Modification</u>

A district court has inherent authority to modify a preliminary injunction based on changed circumstances or new facts.[2] *See A&M Records v. Napster*, 284 F.3d 1091, 1098 (9th Cir. 2002).

Under this legal standard, Defendants' modification motion has no merit. Defendants have not pointed to any changed circumstances or new facts in support of modification. For example, Defendants have not offered any evidence that the products they wish to sell are not materially different from Fitbit's original product.

C. <u>Legal Standard for Reconsideration</u>

To the extent Defendants are effectively asking the Court to reconsider its earlier ruling, their motion still has no merit Civil Local Rule 7-9 requires a showing of one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

---

[2] In their reply brief, Defendants assert that this standard is not applicable because, in a prior order, the Court stated that its order did not preclude the L2 Defendants (and thus implicitly other defendants) from asking for modification or termination if there is a legal basis for seeking such relief. *See* Reply at 2. Defendants ignore the fact that the requirement of a legal basis implicitly incorporates the legal standard for modification or termination of injunctive relief.

4

Civil L.R. 7-9(b). As noted above, Defendants have not provided evidence of any changed circumstances or new facts, which essentially renders grounds (1) and (2) inapplicable. As for (3), it is hard to see how Defendants could invoke it given that the Cali Defendants stipulated to the preliminary injunction.

However, even assuming that Defendants could invoke (3) above, their request for relief would still lack merit. As noted above, Defendants' main problem with the preliminary injunction is that it uses the term "scrap." According to Defendants,

> [Fitbit's] view of the scrap issue is that anything it designated as scrap when it sent [the product] to BCS is prohibited from being sold, regardless of its physical condition, and regardless of the fact that the products sought to be sold are refurbished products which are virtually the same as the products were when they were new [*i.e.*, no material difference].

Mot. at 3. The problem for Defendants is that Fitbit provided evidence to the Court showing that its designation of scrap was not arbitrary or undertaken in bad faith. Fitbit presented evidence that when a product is returned to Fitbit, there is an evaluation of the product to determine whether it should be (1) scrapped (*i.e.*, recycled where possible or otherwise destroyed) or (2) refurbished. *See generally* Docket No. 29 (Supp. Millar Decl. ¶¶ 4-8). As explained in the Supplemental Millar Declaration, when a customer returns a product it

> move[s] from (1) Fitbit retailers, distributors and Fitbit's customer service team, to (2) a product return center [Ingram Micro's Product Return Center or IMRC] where some of the returned products may be designated immediately for scrap destruction [*e.g.*, if a returned product does not have *any* of its retail packaging and is loose or in a baggie], and then (3) possibly to an inspection and grading site [Moduslink or MLTN], before (4) the products are designated either for refurbishment or for scrap destruction [the latter if, *e.g.*, there are defects that cannot be corrected by refurbishment].

Docket No. 29 (Supp. Millar Decl. ¶ 4). There is evidence here that the goods acquired by L2 and sold by Defendants was designated as "scrap" by Fitbit pursuant to the above-described process. Defendants have offered no evidence to the contrary.

Instead, Defendants protest that trademark law is designed to ensure that the consuming public is not deceived or confused; therefore, so long as they disclose that the product being sold is refurbished (which they have), there is no consumer deception or confusion. *See, e.g.*,

*McCarthy v. Fuller*, No. 1:08-cv-994-WTL-DML, 2013 U.S. Dist. LEXIS 162826, at *4-6 (S.D. Ind. Nov. 15, 2013) (rejecting plaintiff's contention that the first sale "doctrine does not apply in situations in which the trademarked goods in question were not sold by the trademark holder at all, but rather were stolen or otherwise obtained illegally"; because the goal of trademark law is to protect against consumer confusion, "'a consumer purchasing genuine goods [even if stolen] receives exactly what the customer expects to receive: genuine goods'"). According to Defendants, it is "frankly absurd" that a consumer would want to know that Fitbit had designated a product scrap – *i.e.*, not refurbishable and therefore subject to recycling or destruction. Reply at 5. But Defendants have failed to explain why it would be absurd for a consumer to want to have such knowledge. Indeed, it is entirely reasonable for a consumer to want to know that the manufacturer of the product had deemed the product not refurbishable even if someone else believed otherwise. Notably, *McCarthy* – the main case on which Defendants rely (and previously relied) – recognized that confusion as to source is not the only concern in trademark law; confusion as to quality is also a concern. *See id.* at *5 ("'It is a tautology that a consumer purchasing genuine goods receives exactly what the customer expects to receive: genuine goods. The consumer is not confused or deceived about the source *or quality* of the product.'") (emphasis added). Here, there is undisputed evidence that the goods at issue did not pass Fitbit's quality control standards and hence were destined for destruction as scrap.

In their reply, Defendants raise new arguments not raised in their opening brief, which the Court refuses to consider on that basis. However, even if the Court were to consider them, Defendants still would fare no better. For example, Defendants try to distinguish *RFA Brands, LLC v. Beauvais*, No. 13-14615, 2014 U.S. Dist. LEXIS 181781 (E.D. Mich. Dec. 23, 2014) (report and recommendation), *adopted by* 2015 U.S. Dist. LEXIS 14914 (E.D. Mich. Feb. 9, 2015), which this Court previously cited in denying Defendants' motion to dismiss. *See* Docket No. 121 (order). According to Defendants, *RFA Brands* is distinguishable because the case did not involve refurbished products but rather new products. *See id.* at *3 (noting that plaintiffs discovered that their products were being offered for sale on Amazon's website and that the products were being offered for sale as new products for prices well below both retail and

wholesale value). But Defendants ignore the fact that the first sale doctrine – as recognized in *RFA Brands* – has two parts: (1) Was there an authorized first sale in the first place and (2) if so, is there a material difference between the original product and the resold product? *See id.* at \*24 (noting that, "even if the first sale was authorized, . . . the first sale defense is still inapplicable here because plaintiffs have presented undisputed evidence that the products defendant offered for sale were 'materially different' than the products sold by plaintiffs"). The Court previously relied on *RFA Brands* with respect to issue (1); the "newness" of a product goes to issue (2). Nothing changes this Court's prior reliance on *RFA Brands*.

Finally, to the extent Defendants are now belatedly asking for a posting of a bond for the preliminary injunction, they have done nothing to explain why a $1 million bond would be appropriate in this case. While Defendants have offered a declaration from Cali's president, that declaration is conclusory, simply claiming without any supporting facts that "[t]he total present and future damage to Cali from the loss of value of its products during the pendency of this action is in excess of $1,000,000." Kelvin Decl. ¶ 13 ("The total present and future damage to Cali from the loss of value of its products during the pendency of this action is in excess of $1,000,000."). Moreover, Fitbit fairly questions the bona fides of the allegation of devastating loss to Defendants given their failure to have any products actually screened pursuant to the preliminary injunction.

D. Miscellany

In their reply brief, Defendants argue that Fitbit needs to stop making certain misrepresentations to the Court. *See* Reply at 3-4. This is outside the bounds of the motion for modification and thus the Court does not address Defendants' arguments.

///
///
///
///
///
///
///
///

7

### III. CONCLUSION

For the foregoing reasons, the motion to modify the preliminary injunction is denied.

This order disposes of Docket No. 137.

**IT IS SO ORDERED**.

Dated: January 16, 2018

_____
EDWARD M. CHEN
United States District Judge