UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FITBIT, INC.,

            Plaintiff,

    v.

LAGUNA 2, LLC, et al.,

            Defendants.

Case No. 17-cv-00079-EMC

**ORDER DENYING DEFENDANTS' EX PARTE APPLICATION FOR RECONSIDERATION**

Docket No. 162

       Cali Resources, Inc., Carlos Kelvin, and Great Value LLC (collectively, "Cali Defendants") have moved for reconsideration of the Court's order of January 5, 2018, in which it granted Fitbit, Inc.'s motion to dismiss and/or strike Cali's libel and related counterclaims. As previously indicated, the Court construes the pending motion as one for leave to file a motion for reconsideration. *See* Civ. L.R. 7-9(a) (providing that "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion"). Having considered the papers submitted, the Court hereby **DENIES** the motion for relief.

## I.    <u>DISCUSSION</u>

       A motion for leave to file a motion for reconsideration is governed by Civil Local Rule 7-9. Under that rule, a party may ask for leave under limited circumstances only – *e.g.*, where there is "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L.R. 7-9(b). The Cali Defendants have failed to show that they meet any of the circumstances identified in Rule 7-9 or that, even if they did, reconsideration would result in a ruling in their favor.

       As an initial matter, the Court notes that the Cali Defendants have attacked only a part of the Court's prior order – more specifically, that part of the order that deals with libel and related

counterclaims predicated on Fitbit's alleged communications with Customs and Border Patrol

("CBP").[1]  Moreover, the Cali Defendants have attacked only a part of the Court's rulings with

respect to Fitbit's alleged communications with CBP.  In its prior order, the Court held that

Fitbit's alleged communications were protected by California's anti-SLAPP statute, the California

litigation privilege, and/or the Noerr-Pennington doctrine.  Here, the Cali Defendants argue that

the Court made an error with respect to its anti-SLAPP analysis only.  Because the Court found

independent grounds for dismissal – *i.e.*, the litigation privilege and the Noerr-Pennington doctrine

– ultimately, the Cali Defendants are asking the Court to reconsider its fee ruling only, which was

predicated on the anti-SLAPP statute.

In its prior order, the Court held that Fitbit's alleged communications with CBP were

protected by the anti-SLAPP statute because (1) its act of contacting CBP was an act in

furtherance of its right to petition (the Cali Defendants did not dispute such) and (2) Cali failed to

make out a prima facie factual showing in support of its libel and related counterclaims.  *See Baral*

*v. Schnitt*, 1 Cal. 5th 376, 384 (2016) (stating that a court's "inquiry is limited to whether the

plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to

sustain a favorable judgment").  With respect to (2), the Court noted as follows:

> Cali has provided evidence showing that the produced seized by
> CBP was not in any counterfeit packaging – *i.e.*, packaging using
> the Fitbit mark.  *See* Kelvin Decl. ¶ 11 & Ex. 2 (photographs).  But
> Fitbit is not simply claiming that counterfeit packaging was a
> problem.  It has also argued that counterfeit chargers and accessories
> were sold as accompanying product, *see, e.g.*, Docket No. 29 (Supp.
> Millar Decl. ¶¶ 15-16, 18-19) (stating that products purchased
> through the Groupon website were shipped in counterfeit Fitbit
> packaging, and with counterfeit charging cables and dongles *falsely*
> *bearing Fitbit marks*) . . . , and the photographs provided by Cali do
> not establish that the chargers and accessories (as opposed to the
> packaging) did not bear any Fitbit trademark.

---

[1] In light of this fact, it is difficult to see how – as the Cali Defendants maintain – the counterclaim is potentially worth "multimillion[s] [of] dollar[s]."  App. at 3.  Indeed, one could argue that a libel made to the CBP only (and not a private party such as Groupon) would not do much to damage the Cali Defendants' reputation.  Furthermore, if a libel were found, then the Cali Defendants would presumably get back the seized property which it could then sell.  Even if the Cali Defendants could not command the price it could have had the goods not been seized, the Cali Defendants have represented that the full value of the seized goods is only "several hundred thousand dollars," and not millions.  Docket No. 132 (Kelvin Decl. ¶ 11).

Docket No. 161 (Order at 12-13).

In the pending motion, the Cali Defendants criticize the Court for relying on the Millar declaration because that declaration was not filed in conjunction with Fitbit's motion to dismiss and/or strike counterclaims, but rather was filed in conjunction with earlier motions. According to the Cali Defendants, had they known that the Court would make a ruling based on the Millar declaration, they would have provided counter-evidence. *See, e.g.*, Kelvin Decl. ¶ 2 (in support of motion for leave to reconsider, testifying that "[t]he products, related to this case, which were seized by U.S. Customs included only original FitBit connecting cables and original FitBit dongles which we received from BCS").

The Court is not persuaded by the Cali Defendants' position for several reasons. First, the Cali Defendants ignore the fact that the Court need not have relied on the Millar declaration at all. The Cali Defendants' libel and related counterclaims are predicated on Fitbit's alleged representation to CBP that "goods being transported from Mexico to [Cali] were counterfeit." Am. Ans. ¶ 12. There is no dispute that the goods being transported included Fitbit accessories such as cables. *See* Docket No. 132 (Kelvin Decl., Ex. 2) (photographs). There is also no dispute that, in its affirmative case, Fitbit has accused the Cali Defendants of counterfeiting accessories such as cables. *See, e.g.*, SAC ¶ 1 (alleging that products sold or offered for sale by all defendants "included counterfeit and/or otherwise non-genuine charging cables and other accessories"). And Fitbit called out that fact expressly in its motion to dismiss and/or strike. *See* Docket No. 127 (Mot. at 15) (arguing that "there is no doubt that the Cali Defendants' products were shipped in counterfeit packaging and that they shipped with counterfeit chargers"). Thus, it was the Cali Defendants' burden – for purposes of the anti-SLAPP analysis – to make out a prima facie showing that the cables were not counterfeit (and not just, *e.g.*, wristbands or packaging). The Cali Defendants failed to offer any evidence as to the cables. *See, e.g.*, Docket No. 143 (Kelvin Decl. ¶ 11) (only testifying that "[t]he band[s] seized by CBP were in class plastic bags without [Fitbit] trademark labels").

Second, although the Court need not have relied on the Millar declaration, its doing so did not violate the Cali Defendants' rights. The Cali Defendants have not cited to any authority

3

barring the Court from considering evidence in the record of the case, even if that evidence was not directly submitted in conjunction with the pending motion for relief.  Moreover, even from a due process standpoint, the Court sees no unfairness to the Cali Defendants.  The Millar declaration has been a critical piece of evidence in this case – evidence on which Fitbit has relied to obtain temporary and preliminary injunctive relief as it addresses Fitbit's quality control process.  Thus, it is more than likely that the Cali Defendants were familiar with the contents of the declaration.  (The Cali Defendants stipulated to preliminary injunctive relief in Fitbit's favor.)

Third, as Fitbit points out, even though Fitbit may not have cited the Millar declaration in its motion to dismiss and/or strike counterclaims, it did cite other evidence to the same effect.  More specifically, in its motion, Fitbit stated: "[T]here is no doubt that the Cali Defendants' products were shipped in counterfeit packaging (*see, e.g.*, comparison photographs counterfeit packaging in ¶ 81 of the SAC) and that they shipped with counterfeit chargers (*see, e.g.*, comparison photographs of counterfeit chargers in Exhibit E to Declaration of Jeff Bonham, Dkt[.] No. 50-6)."  Docket No. 127 (Mot. at 15).  Exhibit E to the Bonham Declaration consists of photographs showing, *inter alia*, a picture of an alleged nongenuine cable displaying the Fitbit diamond logo.

///
///
///
///
///
///
///
///
///
///
///
///

1   Finally, the Cali Defendants' submission of a declaration from Cali's CEO, as a part of the

2   pending motion, is untimely as the Cali Defendants easily could have included the information

3   contained therein as part of the prior declaration provided by the Cali CEO (*i.e.*, in opposition to

4   Fitbit's motion to dismiss and/or strike).[2]  This is especially true since, as noted above, in its

5   motion to dismiss and/or strike, Fitbit called out the fact that its claim encompassed counterfeit

6   chargers displaying the Fitbit diamond logo.

7   For the foregoing reasons, the Cali Defendants' motion for leave to reconsider is denied.

8   This order disposes of Docket No. 162.

9

10   **IT IS SO ORDERED**.

11

12   Dated: January 30, 2018

13   _____

14   EDWARD M. CHEN
     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____
[2] *See* Kelvin Decl. ¶ 2 (alleging that the products "seized by U.S. Customs included only original FitBit connecting cables and original FitBit dongles which we received from BCS").

5