1  BROWN WHITE & OSBORN LLP
   THOMAS M. BROWN (Bar No. 117449)
2  KENNETH P. WHITE (Bar No. 173993)
   CALEB E. MASON (Bar No. 246653)
3  MATTHEW G. WHITTEN (Bar No. 307410)
   333 South Hope Street, 40th Floor
4  Los Angeles, California 90071-1406
   Telephone:  213. 613.0500
5  Facsimile:   213.613.0550

6  Attorneys for Defendants
   P-COVE ENTERPRISES INC. dba
7  BUYERS CONSULTATION SERVICE,
   ENVIRONMENTAL LIQUIDATION, INC.,
8  JONATHAN MANHAN, and
   FRANCIS MICHAEL BAKER

9

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  FITBIT, INC., | Case No.: 3:17-cv-00079-EMC-KAW |
| 14           Plaintiff, | Judge:    Hon. Edward M. Chen |
| 15  v. | |
| 16  LAGUNA 2, LLC; | **DEFENDANTS' OPPOSITION TO PLAINTIFF FITBIT, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 17  P-COVE ENTERPRISES INC. dba BUYERS CONSULTATION SERVICE, a California Corporation; | |
| 18  ENVIRONMENTAL LIQUIDATION, INC., a California Corporation; | *[CONCURRENTLY FILED: (1) DECLARATIONS OF MATTHEW WHITTEN, SARAH CADE, and ASHISH SOOD; and* |
| 19  JONATHAN MANHAN, an individual; FRANCIS MICHAEL BAKER aka | |
| 20  MIKE BAKER, an individual. et al., | *(2) Request for Judicial Notice]* |
| 21 | |
| 22           Defendants. | Date:     June 28, 2018 |
| 23 | Time:     1:30 p.m. Court:    Courtroom 5, 17th Fl. |

24

25

26      Defendants P-Cove Enterprises Inc. dba Buyers Consultation Service ("BCS");

27  Environmental Liquidation, Inc.; Jonathan Manhan and Francis Michael Baker

28  (collectively, "Defendants" or "BCS Defendants") hereby file their Opposition to

                                    1

Plaintiff Fitbit, Inc.'s Motion for Partial Summary Judgment.  This Opposition is based on the attached Memorandum of Points and Authorities; the Declarations of Matthew Whitten, Sarah Cade, and Ashish Sood filed concurrently; and the Request for Judicial Notice filed concurrently; all argument and evidence presented by counsel at the hearing on the Motion; and any other facts or evidence of which the Court may take judicial notice; the files and records of this case; and such further argument as the Court permits.

DATED:  June 7, 2018    Respectfully submitted,

BROWN WHITE & OSBORN LLP

By  s/ *Caleb E. Mason*
_____
THOMAS M. BROWN
KENNETH P. WHITE
CALEB E. MASON
MATTHEW G. WHITTEN
Attorneys for Defendants
P-COVE ENTERPRISES INC. dba
BUYERS CONSULTATION SERVICE,
et al.

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................. 1

II.  RELEVANT FACTS ............................................................ 2

   A.  The Truly Material Facts ............................................... 2

   B.  Fitbit's Inaccurate and Argumentative Facts ................... 4

      1.  The Statement of Work ......................................... 4

      2.  The BCS Defendants' Representations ...................... 4

      3.  L2's Sale of the Refurbished and Repurposed Products ............ 6

III.  ARGUMENT .................................................................... 6

   A.  Standard for Summary Judgment .................................. 6

   B.  The BCS Defendants, Not Fitbit, Are Entitled to Partial Summary
       Judgment on the Contract Claim ................................... 7

   C.  Fitbit's Trademark and Unfair Competition Arguments Fail as a Matter
       of Fact and Law ..................................................... 12

      1.  Fitbit Cannot Prove Trademark Infringement Because the
          Statement of Work Permitted BCS to Repurpose the Fitbit
          Products ......................................................... 12

      2.  Fitbit's Demand That the Court Presume Confusion
          Is Meritless ……………………………………………12

      3.  Fitbit's Cable and Packaging Claims Are Meritless .................. 15

      4.  Fitbit Has Not Established Likelihood of Confusion, Let Alone
          Beyond Any Genuine Dispute of Fact ....................... 16

      5.  Fitbit's Joint and Several Liability Argument Is Meritless ........ 17

      6.  Fitbit's Unfair Competition Claims Fail with Its Infringement
          Claim ............................................................ 18

   D.  Fitbit Fails to Meet Its Burden as to Any Claim, Because It Fails to
       Present Any Admissible Evidence of Damages…………………………19

i

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

E.   Defendants' Evidentiary Objections to Fitbit's Motion for Partial
     Summary Judgment.................................................................................. 18

    1.   Defendants' Objections to the Millar Declaration...................... 18

    2.   Defendants' Objections to the Bonham Declaration .................. 18

    3.   Defendants' Objections to the Alinder Declaration ................... 21

IV.   CONCLUSION .............................................................................. 22

# TABLE OF AUTHORITIES

Page

**Cases**

*A.C. v. City of Santa Clara,*
 No. 13-CV-03276-HSG, 2015 WL 5350412 (N.D. Cal. Sept. 14, 2015)........ 16, 21

*Adobe Systems Inc. v. Blue Source Group, Inc.*
 125 F.Supp.3d 945 (N.D. Cal. 2015) .................................................................. 17

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ......................................................................................... 6, 7

*Arizona v. Tohono O'odham Nation,*
 944 F. Supp. 2d 748 (D. Ariz. 2013)…………………………………………….10

*Cahill v. Golden Gate Bridge, Highway & Transportation Dist.,*
 No. 15-CV-01374-JCS, 2016 WL 1070655  (N.D. Cal. Mar. 18, 2016)........ 16, 21

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) ............................................................................................. 6

*Century 21 Real Estate Corp. v. Sandlin,*
 846 F.2d 1175 (9th Cir. 1988)............................................................................ 12

*Dore v. Arnold Worldwide, Inc.,*
 39 Cal.4th 384 (2006) .......................................................................................... 9

*El Greco Leather Prods. Co, Inc. v. Shoe World, Inc.,*
 806 F.2d 392 (2d Cir. 1986).......................................................................... 13, 14

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,*
 456 U.S. 844 (1982) ........................................................................................... 16

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.,*
 658 F.3d 936 (9th Cir. 2011).............................................................................. 17

*NEC Electronics v. CAL Circuit Abco,*
 810 F.2d 1506 (9th Cir. 1987)............................................................................ 14

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*
 210 F.3d 1099 (9th Cir. 2000).............................................................................. 7

*Northfolk Water Co. v. Medland,*
 187 F. 163 (9th Cir. 1911).................................................................................... 8

*Parsons v. Bristol Development Co.,*
 62 Cal.2d 861 (1965) ............................................................................... 9, 10, 11

*Rearden LLC v. Rearden Commerce, Inc.*
 683 F.3d 1190 (9th Cir. 2012)............................................................................ 12

*Shell Oil Co. v. Winterthur Swiss Ins. Co.,*

iii

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

12 Cal.App.4th 715 (1993) ........................................................................ 8, 9, 14

*Thomas v. Newton Int'l Enters.*,
    42 F.3d 1266 (9th Cir. 1994)................................................................... 17

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
    715 F.2d 1327 (9th Cir. 1983)................................................................. 7

*United States v. Farmer*,
    370 F.3d 435 (4th Cir. 2004)............................................................ 13, 14

*Waller v. Truck Ins. Exch., Inc.*,
    11 Cal. 4th 1 (1995) ............................................................................ 7, 8

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*,
    106 F.3d 894 (9th Cir. 1997)................................................................. 14

*Wolf v. Superior Court*,
    114 Cal.App.4th 1343 (2004) ...................................................... 9, 10, 11

**Statutes**

15 U.S.C. § 1114(a)(1)....................................................................................... 12

Cal. Civ. Code, § 1638........................................................................................ 7

Cal. Civ. Code, § 1641........................................................................................ 8

**Rules**

Fed. R. Civ. P. 45(a) ........................................................................................... 7

Fed. R. Civ. P. 56(c)(2)........................................................................................ 6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## INTRODUCTION

4       Plaintiff Fitbit, Inc.'s ("Fitbit") Motion for Partial Summary Judgment ("Fitbit's

5   Motion") has two goals and fails at both.  On the surface, as its first goal, Fitbit's

6   Motion seeks partial summary judgment on its First Claim for Relief for Federal

7   Trademark Infringement and Counterfeiting, Third Claim for Relief for Federal Unfair

8   Competition, Fourth Claim for Relief for Breach of Contract, and Eighth Claim for

9   Relief for California Unfair Competition against Defendants P-Cove Enterprises Inc.

10  dba Buyers Consultation Service ("BCS"), Environmental Liquidation, Inc. ("ELI"),

11  Jonathan Manhan ("Manhan") and Mike Baker ("Baker") (collectively, Defendants or

12  "BCS Defendants").  Fitbit's Motion fails at this goal.  Its arguments are factually and

13  legally meritless for the following reasons:

14      • The Court should reject Fitbit's contractual theory because the Statement of

15         Work – the governing contract in this case – expressly permitted BCS to

16         repurpose Fitbit products at the product level, which is exactly what BCS did.

17         Fitbit's claim that BCS was not allowed to refurbish and resell its products

18         depends on a conclusory argument that ignores the express provisions of the

19         Statement of Work.

20      • The Court should reject Fitbit's trademark infringement claim because it rests

21         on faulty legal and factual premises.  Fitbit claims that the refurbished

22         products were "counterfeit" and that the Court should presume customer

23         confusion, but none of Fitbit's cases support that questionable proposition.

24         Fitbit's allegation that the BCS Defendants should be liable if former

25         codefendant L2 sold the refurbished products with counterfeit cables and

26         packaging fails because the undisputed facts show that L2 did so *without* the

27         BCS Defendants' knowledge.  Fitbit's remaining arguments about likelihood

28         of customer confusion rely wholly on an inadmissible expert report, which

1

even if it were admissible, is soundly contradicted by the admissible declaration of Defendants' expert, Professor Ashish Sood.

- The Court should reject Fitbit's federal and California unfair business practices claims because these claims are expressly premised on Fitbit's trademark infringement claim and fall with it.

In sum, Fitbit's Motion is all bluster and no substance, and does not survive scrutiny. The Court should deny it.

More importantly, Fitbit's Motion has a second surreptitious goal: to undermine the BCS Defendants' Motion for Summary Judgment, also filed on May 24, 2018, by creating the appearance that the case is choked with disputed issues of fact. That effort also fails. While Fitbit's Motion is full of meritless arguments about immaterial facts, the BCS Defendants' motion is premised on a limited set of undisputed necessary and material facts.  Accordingly, the issue for the Court to decide when reviewing both sides motions, is whether the undisputed facts entitle either side to summary judgment as to any of the claims for relief in this case. As to each claim, either the undisputed facts demonstrate that Defendants, and not Fitbit, are entitled to judgment as a matter of law; or else there is a material dispute of facts.  Accordingly, for the reasons discussed below, Defendants respectfully request that the Court deny Fitbit's Motion.

## II.

## RELEVANT FACTS

In their Motion for Summary Judgment, ECF No. 241, the BCS Defendants provided a concise statement of facts, limited to non-argumentative and undisputed facts material and necessary to the motion.  Fitbit, by contrast, has offered an extended screed replete with gratuitous allegations about the entire case.  Fitbit has two aims, neither of which will succeed.  First, Fitbit hopes to distract the Court from the limited and specific set of facts necessary to reject its Motion.  Second, Fitbit hopes to sabotage the BCS Defendants' Motion for Summary Judgment by creating the appearance that the case is fraught with disputed issues of fact.  But the Court will not fall for that hoary

2

litigator's ploy.

### A.    The Truly Material Facts

The material facts that defeat this Motion are few.  Fitbit and BCS entered into a contract – a Statement of Work – under which Fitbit would send surplus or returned merchandise to BCS for recycling. Fitbit's Motion at 16:4-6.  The Statement of Work twice provided that in addition to recycling the merchandise, BCS could "repurpose" it at the product or component level.  Declaration of Zachary J. Alinder in Support of Fitbit's Motion for Partial Summary Judgment ["Alinder Decl."], Ex. I at FIT005988, ¶ 6 [hereinafter "Statement of Work"].  The Statement of Work also provided that Fitbit could request a certificate of recycling or destruction.  Statement of Work, ¶ 3.  Fitbit demanded that BCS provide a certification that it complied with the R2 Standard, a set of best practices standards for the electronics recycling industry.  Defendants' Motion for Summary Judgment, Docket No. 241 ("Defendants' Motion") at 4:27-5:1.  The R2 Standard require recyclers to refurbish and reuse electronics when possible as a first option.  Defendants' Motion at 5:3-8.

BCS had a longstanding relationship with former codefendant Cali Resources, Inc. ("Cali"), another recycler.  Defendants' Motion at 6:16-17.  Under that agreement, BCS would send Cali materials and merchandise and Cali would process them and refurbish and resell such materials as could be refurbished.  Defendants' Motion at 6:16-21, 23-27.  BCS and Cali would split the profit from any resulting sales.  Defendants' Motion at 6:21-23.  BCS sent the merchandise it received from Fitbit to Cali.  Defendants' Motion at 6:16-18.  Cali processed the Fitbit merchandise and materials, recycled what could not be used, and refurbished the products that could be reused.  Defendants' Motion at 6:23-26.  Cali then sold the refurbished Fitbit products to former codefendant Laguna 2, LLC ("L2"), which in turn sold them as refurbished Fitbit products on Groupon.  Defendants' Motion at 6:27-7:1.  Cali did not tell BCS that it was selling the Fitbit products to L2, and the BCS Defendants and L2 did not know of each other's existence until Fitbit filed this case.  Defendants' Motion at 7:5-6, 8-10.

On several occasions, Fitbit requested that particular shipments be destroyed. Defendants' Motion at 6:11-13.  BCS arranged for those shipments to be destroyed and certified that they had been destroyed.  Defendants' Motion at 6:13-15.

## B.   **Fitbit's Inaccurate and Argumentative Facts**

Fitbit's factual recital is convoluted and inaccurate.  It mischaracterizes and misrepresents many documents and simply asserting its own argumentative interpretation of events.  Most of them are irrelevant to this Motion, and neither the BCS Defendants nor the Court need address them.  In fact, many of the documents upon which Fitbit relies show undisputed facts that directly contradict Fitbit's interpretations on numerous subjects.

### 1.   **The Statement of Work**

Fitbit concedes that the Statement of Work between Fitbit and BCS is the relevant contract.  Fitbit Motion at 16: 4-6.  Significantly, throughout its statement of facts, Fitbit repeatedly and argumentatively misrepresents the content of the Statement of Work.  For instance, Fitbit alleges that BCS was contracted under "strict instructions" to recycle and/or destroy Fitbit-branded products which were sent to them by Fitbit.  Fitbit Motion at 1:12-14.  This is an argument, not a fact.  The Statement of Work between Fitbit and BCS expressly permits products to be "repurposed at the product or component level."  Statement of Work, ¶ 6.  Similarly, Fitbit alleges that Defendants agreed to certify that the products received from Fitbit would be recycled "down to plastic, metal, wire cardboard or other commodity level components" and would provide certificates of destruction certifying that process.  Fitbit Motion at 5:25-6:3. Once again, Fitbit misrepresents the Statement of Work and ignores its express provisions, which provide that its products will be "either recycled down to the commodity level *or repurposed at the product or component level*" and that Fitbit had the right to *request* Certificates of Recycling and Destruction.  Statement of Work at ¶ 6 (emphasis added).

### 2.   **The BCS Defendants' Representations**

4

Fitbit alleges that Defendants, at the beginning of the relationship underlying this action, assured Fitbit that all Fitbit products sent to Defendants would be broken down and recycled or destroyed.  Fitbit's Motion 4:13-15.  But this is merely another misrepresentation of the Statement of Work and its effect.  It's undisputed that the BCS Defendants sent Fitbit a draft of the Statement of Work to govern their relationship and that Fitbit reviewed and edited it and returned it to BCS with Fitbit's revisions, which BCS accepted.  Defendants' Motion at 5:14-20.  It's also undisputed that the Statement of Work lets BCS repurpose Fitbit merchandise at the product level.  Statement of Work at ¶ 6.  Fitbit alleges that it made various statements to BCS *before* that, but it does not deny (and admits expressly) that the Statement of Work is the operative contract.  Fitbit's Motion at 16:4-6; Defendants' Motion at 6:2-3.

Fitbit alleges that Defendants represented to Verizon Wireless that "BCS had been given strict instructions to destroy all Fitbits for recycling."  Fitbit Motion at 10:1-4.  This is categorically false. The email in question has nothing to do with the Statement of Work.  In fact, in the email in question, BCS was discussing, at Fitbit's request, a proposed transaction that Fitbit had suggested BCS enter into with Verizon, in which BCS would recycle a shipment of Fitbit products from Verizon's stock.  Deposition of Jonathan Manhan as 30(b)(6) witness for BCS, Exhibit A to the Declaration of Matthew Whitten ("Whitten Decl.") at 113:17-114:5.  Fitbit had requested destruction of *that particular potential shipment*, and BCS accurately informed Verizon of that request.  In fact, BCS did not receive that shipment, because Verizon chose to sell the products on the open market, where it would get a better return for them.  *Id*.

Similarly, Fitbit misrepresents a letter that BCS provided to Cali; Fitbit falsely implies that the letter refers to Fitbit-branded products BCS obtained as part of the transactions at issue in this case.  Fitbit's Motion at 12:28-13:5. This misrepresentation is blatantly inaccurate and misleading.  The letter expressly discusses *multiple* products from multiple sources, not just Fitbit-branded products.  Alinder Decl., Ex. KK.  Fitbit

5

deliberately misquotes the letter, omitting the discussion of Wal-Mart, Target, and Best Buy, and others. *Id.* The letter references products received from *all* of these companies, not Fitbit alone. Fitbit's deliberate misrepresentation of the letter is not good practice.

Fitbit further alleges that the BCS Defendants failed to inform Fitbit that it was reselling Fitbit's products. Fitbit's Motion at 10:20-23. But Fitbit conceals that the BCS Defendants **did not know** if any particular Fitbit products were being resold. Defendants' Motion at 7:10-11. BCS passed the products along to Cali, its downstream vendor, which processed and recycled or refurbished and resold them without telling BCS what it was doing with any load. Declaration of Carlos Kelvin, Docket No. 241-20 ("Kelvin Decl."), ¶ 4.

### 3.  L2's Sale of the Refurbished and Repurposed Products

Fitbit alleges that the BCS Defendants passed off scrap Fitbit-branded products as "like new [sic] refurbished products." Fitbit's Motion at 2:2-3. Notably, Fitbit offers absolutely *no* evidence that the BCS Defendants *themselves* sold or marketed Fitbit products at all. They did not – they passed the Fitbit products on to Cali, another R2-certified recycler. Manhan Decl., ¶ 5. Cali evaluated the products, recycled some, and refurbished some and resold them to L2. Defendants' Motion at 6:19-21, 27-28. L2 sold them on Groupon. Defendants' Motion at 6:28-7:1. The BCS Defendants didn't sell any.

Fitbit also falsely alleges that Defendants "completely controlled whether they were recycled or resold." Fitbit's Motion 7:28-8:1. This, again, is mere argument, not fact. The undisputed evidence demonstrates unequivocally that the BCS Defendants exercised no control over whether a particular load was refurbished or recycled at the commodity level. Kelvin Decl., ¶ 4. Instead, BCS shipped the merchandise and materials on to Cali, which refurbished, repurposed, or recycled it. Defendants' Motion at 6:16-21, 23-26. Similarly, contrary to Fitbit's oft-repeated and conclusory conspiracy allegations, Cali did not tell BCS that it was selling the Fitbit products to L2,

6

and the BCS Defendants and L2 did not know of each other's existence until Fitbit filed this case.  Defendant's Motion at 7:5-11.

### III.

### ARGUMENT

#### A.    Standard for Summary Judgment

Summary judgment is proper where the pleadings and materials demonstrate that "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A material fact is one "that might affect the outcome of the suit under the governing law."  *Id*.

The moving party has the initial burden to show that no genuine issue of material fact exists.  Fed. R. Civ. P. 45(a); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  In ruling on a motion for summary judgment, the evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party.  *Twentieth Century-Fox Film Corp. v. MCA, Inc*., 715 F.2d 1327, 1328-29 (9th Cir. 1983).  If a genuine dispute of material fact exists the court must deny a motion for summary judgment.  *Anderson*, 477 U.S. at 248.

#### B.    The BCS Defendants—Not Fitbit—Are Entitled to Partial Summary Judgment on Fitbit's Contract Claim

In their Motion for Summary Judgment, the BCS Defendants demonstrate that they are entitled to Partial Summary Judgment on Fitbit's Fourth Claim for Relief for Breach of Contract because the contract at issue, the Statement of Work, permits Defendants to do exactly what they did.  Defendants' Motion at 11-15.  In Fitbit's Motion, Fitbit claims that it is entitled to judgment on the same claim.  Fitbit's argument is patently wrong under the express provisions of the contract and the relevant law of contractual interpretation.

It's undisputed that the Statement of Work is the relevant contract that Fitbit accuses Defendants of breaching.  Fitbit Motion at 16:4-6.  It's also undisputed that the Statement of Work contains language allowing Defendants to "repurpose" Fitbit's products.  Fitbit's Motion 16.  The question is one of interpretation:  Fitbit asserts that "repurpose" cannot allow Defendants to repurpose the Fitbit products by passing them along for refurbishment and resale.  They're wrong as a matter of law and fact for the following reasons.

It is well-settled that when there's a dispute about interpretation of a contract, courts "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995); Cal. Civ. Code, § 1638.  Tellingly, Fitbit's analysis of the language of the Statement of Purpose is extremely perfunctory; they do not quote the relevant provisions in full nor place it in its context.  Fitbit Motion at 16.  That's because the plain language defeats their claim.

The preamble to the Statement of Work provides that BCS's "services will include the recycling and repurposing of the items received from Fitbit."  Statement of Work at FIT005987, preamble.  The preamble delineates what activities BCS can undertake.  *See Northfolk Water Co. v. Medland*, 187 F. 163, 170 (9th Cir. 1911) ("[t]he contract in its preamble expressly recites the purpose and object of it").  Moreover, Section 6 of the Statement of Work unmistakably describes BCS's obligations in straightforward language:

> BCS hereby certifies that all product contained in loads will be either recycled down to the commodity level *or repurposed at the product or component level* (meaning that product would be recycled down to plastic, metal, wire, cardboard, or other commodity level component).

Statement of Work at FIT 005988 ¶ 6 (emphasis added).

The first question for the Court is what is the plain meaning of those words on their face.  *Waller,* 11 Cal.4th at 17.  In answering that question, the Court must give "effect to every part, if reasonably practicable, each clause helping to interpret the

other." Cal. Civ. Code, § 1641. In so doing, "the way we define words should not produce redundancy, but instead should give each word significance." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 753 (1993).

Here, the plain language of the Statement of Work *twice* states that BCS can repurpose Fitbit products.  Moreover, it offers repurposing as an *alternative* to recycling, and draws a distinction between repurposing at the *product level* and at the *component level*.  Statement of Work at FIT005988, ¶ 6.  It defines repurposing at a component level as recycling "down to plastic, metal, wire, cardboard, or other commodity level component."  *Id.*  Fitbit's Motion fails to quote this language for the Court and devotes but a single conclusory sentence to its meaning.  Fitbit Motion at 16.

In discovery, Fitbit's Rule 30(b)(6) witness asserted that repurposing on the product level meant reducing a product down to component parts and recycling those parts.  Defendants' Motion at 13: 7-9.  But that simply ignores the plain language and meaning of the Statement of Work and fails to give effect to each of its words.  The Statement of Work treats recycling and repurposing as different things and treats repurposing of products as separate from repurposing of components, which it defines as recycling them down to a commodity level.  Statement of Work at FIT05988, ¶ 6.  Fitbit's twisted interpretation renders "repurpose on a product level" to be surplusage, which the rules of interpretation forbid.  *Shell Oil,* 12 Cal.App.4th at 753.  Even Fitbit admits that can't be right – the same Rule 30(b)(6) witness admitted that "product" and "component" have distinct meanings in the Statement of Work.  Defendants' Motion at 13:19-24.  In fact, Fitbit's interpretation renders the twice-used word "repurpose" itself surplusage, since under Fitbit's interpretation it would mean "recycled."

Fitbit turns expressly (and in defiance of longstanding rules of contract law) to parol evidence, claiming that an email exchange that occurred three days before BCS sent Fitbit the Statement of Work, and five months before Fitbit returned the Statement to BCS with its edits, somehow overrides the language of the Statement of Work.  Fitbit's Motion at 4:24-5:3 (citing Exhibit T to Declaration of Zachary Alinder).

9

Fitbit's attempt is misguided: "Federal law applies the traditional parol evidence rule: a court first considers the plain language of the contract, and if the language is not ambiguous on its face, parol evidence is never considered." *Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 759 (D. Ariz. 2013) (citing *Nehmer v. DVA*, 494 F.3d 846 (9th Cir. 2007). The email exchange Fitbit cites is not part of the Statement of Work and does not inform its meaning.

In fact, the plain language of the Statement of Work therefore resolves the issue in the BCS Defendants' favor. When the plain meaning is unambiguous, the analysis is over. *Dore v. Arnold Worldwide, Inc.,* 39 Cal.4th 384, 393 (2006). But the Court should still resolve the issue in the BCS Defendants' favor even if it concludes that the term "repurpose" is ambiguous. Resolution of the meaning of an ambiguous term is a question of law for the Court. *Wolf v. Superior Court*, 114 Cal.App.4th 1343, 1351 (2004); *Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 865-66 (1965). Here, undisputed evidence shows that "repurpose" necessarily must include refurbishing and resale for the following reasons.

First, it is undisputed that Fitbit required BCS to certify its compliance with the R2 Standard, the leading best practices standard for the electronics recycling industry. Defendants' Motion at 4:25-5:1. It's equally undisputed that the R2 Standard specifically requires refurbishment and resale of electronics when possible: the standard provides that a recycler "shall take all practical steps to direct tested equipment and components to reuse and resale, and to direct equipment capable of repair to qualified refurbishers, unless a customer directs otherwise." Defendants' Motion at 5:3-8. Fitbit cannot assert that "repurpose" means something that contradicts the very standards it demanded BCS follow. Second, it's undisputed that Fitbit made specific demands that particular shipments of products be destroyed, and that BCS did so on those occasions. Defendants' Motion at 6:11-15. Those specific demands demonstrate that the contract permits BCS to have product refurbished for sale– if it was *all* to be destroyed, there would be no need to make specific requests for destruction of particular loads.

Therefore, even if the Court finds that the term "repurpose" is ambiguous (it is not), the undisputed facts support the BCS Defendants' interpretation, not Fitbit's.

There is only one circumstance where interpretation of the Statement of Work would be a question of fact for the jury – if the Court finds that resolution of the question turns on the *credibility* of extrinsic evidence. *Parsons,* 62 Cal.2d at 865-66; *Wolf,* 162 Cal.App.4th at 1134. If – and only if – the Court decides that the language of the Statement of Work is ambiguous, *and* that the undisputed facts above do not resolve it, *and* that the Court must look to the expert opinions to make the determination, then the Court must *still* deny Fitbit's Motion. First, Fitbit relies on the unsworn expert report of Michael Easterbrook. Fitbit's Motion at 16. As explained below, *see* Section III.D, unsworn expert reports are inadmissible and may not be considered on summary judgment.

The BCS Defendants, by contrast, offer the sworn declaration of Sarah Cade, an experienced electronics recycling consultant who was actually a member of the committee that *drafted* the R2 Standard at issue in this case—the very standard which Fitbit required BCS to comply with. Cade Decl. at ¶ 1. Ms. Cade explains that, based on her training and experience, "repurpose" is a common and well-understood word in the electronics recycling industry, and means refurbishing and repairing for resale. *Id.* at ¶ 5. She explains, based on her long industry experience, that "the phrase 'repurpose at the product level' means 'reuse/refurbish/repair/resell the entire product without dismantling it.'" *Id.* She opines that the language of the Statement of Work permitted BCS to refurbish and resell Fitbit products. *Id.* at ¶ 7. Finally, she explains that in the industry, when a party wants all products destroyed and not refurbished, it says so explicitly in the contract. *Id.* at ¶ 4. Her expert declaration directly contradicts the report of Fitbit's expert Michael Easterbrook, which would create a dispute of credibility between the two if the Easterbrook report were admissible. Resolving that dispute is a question of fact, precluding summary judgment. *Parsons*, 62 Cal.2d at 865-66; *Wolf,* 162 Cal.App.4th at 1134. But the Court need not reach that credibility

11

determination: Ms. Cade's opinion is unrebutted because the Easterbrook report is inadmissible; and, as is set forth above, the meaning of "repurpose" is not ambiguous in any event.

Fitbit also asserts that, even if Defendants were able to refurbish and resell Fitbit products, they would be in breach of the Statement of Purpose because they did not remit 70% of their profits to Fitbit.  Fitbit's Motion at 16.  Fitbit is wrong.  The express provisions of the Statement of Purpose only require Defendants to remit ***"net proceeds"*** –that is, profit—from sale of Fitbit materials.  Statement of Work at FIT005988, ¶ 5. But the uncontradicted evidence demonstrates that the profit has yet to be determined. BCS sent the products to Cali under a longstanding agreement under which Cali and BCS would split the ***profits*** on the sale of anything BCS sent to Cali.  Defendants' Motion at 6:21-23.  BCS is therefore entitled to half of the ***profits*** of Cali's sale of the materials; it can then calculate its own costs and determine its own profits, if any, on those materials.  Manhan Decl., ¶ 6.  But the profits of Cali's sale have not been calculated, and BCS cannot calculate its profits without Cali's statement of costs. Manhan Decl., ¶ 7.  Those costs are substantial and will continue to grow, as they include attorney fees Cali has incurred as a defendant in this case.  Kelvin Decl., ¶ 5. Though BCS has already received part of the *gross* proceeds of Cali's sale of the materials, it owes and must pay Cali its share of Cali's statement of costs and does not yet know what its *net* profits are.  Manhan Decl., ¶ 7.  Therefore, the undisputed evidence shows that there has been no breach of the payment provision because there are no profits yet to which the 70% formula could be applied.

Therefore, the Court should deny Fitbit's Motion for Partial Summary Judgment as to the Fourth Claim for Relief of Breach of Contract.

### C.      Fitbit's Trademark and Unfair Competition Arguments Fail as a Matter of Fact and Law

In their own Motion, the BCS Defendants demonstrated that they are entitled to summary judgment on Fitbit's trademark and unfair competition claims.  Defendants'

Motion at 8-11, 22-24.  Fitbit's Motion – which asserts that it is entitled to partial summary judgment on those same claims – is meritless for additional legal and factual reasons.

### 1.    Fitbit Cannot Prove Trademark Infringement Because the Statement of Work Permitted BCS To Repurpose the Fitbit Products

As is set forth above, provisions in the Statement of Work explicitly permitted BCS to repurpose Fitbit's products, as encouraged and required by the very R2 Standard that Fitbit demanded BCS meet.  Those provisions defeat Fitbit's trademark infringement claim because they expressly gave BCS the right to repurpose the products.

A claim of trademark infringement requires plaintiff to demonstrate that the defendant acted without the plaintiff's consent. *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1178 (9th Cir. 1988); 15 U.S.C. § 1114(a)(1).  BCS not only had Fitbit's consent, but it was *contracted to do what it did.*  Since Fitbit's argument involving its Third Claim for Relief for Trademark Infringement and Eighth Claim for Relief for Unfair Competition are explicitly premised on its First Claim for Relief for Trademark Infringement, Fitbit's Motion at 23, the Court should deny the motion as to all of those claims.

### 2.    Fitbit's Demand That the Court Presume Confusion Is Meritless

As Fitbit concedes (Fitbit Motion at 16-17), to prevail on its First Claim for Relief for Trademark Infringement it must prove that the BCS Defendants used its mark in a way "likely to cause consumer confusion."  *Rearden LLC v. Rearden Commerce, Inc.* 683 F.3d 1190, 1202 (9th Cir. 2012).  Fitbit begins by boldly asking the court to *presume* this element because the BCS Defendants passed on Fitbit products to be refurbished and resold, rendering them "counterfeit."  But Fitbit's authorities do not support that dubious proposition.

13

Fitbit cites four cases for the proposition that the refurbished Fitbit products are "counterfeit" because Fitbit didn't authorize the refurbishment.  Fitbit's Motion 18:10-21.  None of Fitbit's cases hold that.  Fitbit's first case is *El Greco Leather Prods. Co, Inc. v. Shoe World, Inc.*, 806 F.2d 392 (2d Cir. 1986).  In *El Greco*, a shoe company placed an order with a factory for a shipment of shoes, then cancelled the order and did not accept the completed shoes from the factory.  The contract specifically provided that no orders were approved or accepted until a company official had signed a certificate—which never happened.  *El Greco Leather Prods. Co, Inc.*, 806 F.2d at 395. The factory then sold the shoes to a distributor, marketing and selling them as genuine new shoes under the shoe company's brand, and was held liable for infringement.  *Id.*

*El Greco* does not support Fitbit's position.  First, in *El Greco* the offending manufacturer made false statements to the consuming public about the shoes, marketing and selling them as new products under the plaintiff's brand. *Id.* at 394.  In other words, the defendant marketed the shoes as something they were not.  In this case, by contrast, the undisputed evidence is that L2 explicitly marketed its products as "refurbished." Fitbit's Motion at 7:15-16.  Second, in *El Greco*, the shoes were never genuine El Greco products because under the terms of the parties' contract, the plaintiff had never accepted them.  In this case, by contrast, it is undisputed that Fitbit manufactured and accepted the products at issue, and sold them to retailers and distributors, before receiving them back as overstock or returns.  Fitbit Motion at 4:3-8.

*El Greco* might be good authority in a case in which a defendant refurbished products and then marketed them as "new," but that is not this case.  There is no allegation and no evidence that any of the BCS Defendants, Cali, or L2, ever identified any of the refurbished products as anything other than a refurbished product. Accordingly, *El Greco* does not support Fitbit in this case.

*United States v. Farmer*, 370 F.3d 435 (4th Cir. 2004), is even less on point. The goods in *Farmer* were counterfeits by any definition, falsely marketed and sold to the public as new branded products.  *Farmer*, 370 F.3d at 436.  The defendant in *Farmer*

bought factory-reject clothes with no brand labels, then sewed on counterfeit brand labels, and sold the clothes as new genuine branded goods.  *Id.*  No facts here resemble that scenario.

Fitbit's next case, *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104 (4th Cir. 1991), fares no better.  Just as in *Farmer*, the defendant in *Shell Oil* marketed and sold crude oil as "Shell Rotella T" oil, when it was not.  *Shell Oil Co.*, 928 F.2d at 106.  Once again, like *Farmer* and *El Greco*, *Farmer* is irrelevant because there's no evidence that any defendant here did anything remotely analogous. To the contrary, it's undisputed that L2 labeled all of the products it sold as "refurbished Fitbits," and that they all were, in fact, refurbished Fitbits.  Fitbit Motion at 10:28-11:2.  There is no allegation in this case that L2 made any false statement to the public about what the products were that it sold.

These three cases stand for the unremarkable proposition that a seller of goods can incur liability by telling the public that a product is something that it's not, which is true, and irrelevant to this case.  Even if the BCS Defendants were liable for L2's marketing – and, as is set forth below, they are not – Fitbit offers no evidence that L2's "refurbished" designation on its products is inaccurate.  Fitbit merely argues that the products are illegitimate because it didn't want them to be refurbished and resold.  But Fitbit's own authority contradicts that argument: "[a]s a general rule, trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent."  *Shell Oil*, 928 F.2d at 107.  The Ninth Circuit agrees.  *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987) ("Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent.")

Finally, Fitbit relies on *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894 (9th Cir. 1997).  Fitbit offers neither a parenthetical nor an explanation for how *Westinghouse* is relevant.  It isn't.  In fact, that court upheld a jury verdict for the defense in a trademark case.  The generic language Fitbit cites from the

case is merely an unremarkable and inapplicable proposition about customer confusion. Thus, Fitbit's authority does not support its claim that the refurbished products here are "counterfeit" or that the Court may presume customer confusion.  Fitbit offers no case for the proposition that a refurbished product accurately labeled "refurbished" is counterfeit.

### 3.    Fitbit's Cable and Packaging Claims Are Meritless

In its next attempt to prove likelihood of confusion, Fitbit argues that L2 sold some Fitbit products with counterfeit or non-genuine packaging or charger cables on Groupon.  But Fitbit offers no evidence sufficient to hold the BCS Defendants liable for L2's actions.

Fitbit repeats the conclusory allegation that "Defendants orchestrated a conspiracy to resell non-genuine scrap products as 'like new' refurbished 'Fitbit' products, some in counterfeit packaging and with counterfeit cables . . . ."  Fitbit's Motion 17:12-13.  But unsupported statements and conclusions in a brief are not admissible evidence.  The undisputed admissible evidence is that the BCS Defendants and L2 ***did not know of each other's existence*** until Fitbit filed this case.

It's undisputed that BCS received Fitbit's products under the Statement of Work, Fitbit Motion at 4:8-11, then passed the products along to Cali under their preexisting arrangement.  Defendants' Motion at 6:16-18.  Cali then processed most of the products and materials for recycling, refurbished suitable ones, and sold those to L2. Defendants' Motion at 6:23-28.  L2 sold the refurbished products on Groupon. Defendants' Motion at 6:28-7:1. The BCS Defendants have filed declarations from the principals of all three companies involved: BCS, Cali, and L2.  All three affirmed that BCS and L2 had no relationship before this case, that BCS and L2 did not know of each other's existence before this case, and that Cali did not tell BCS that it had sold the Fitbit products to L2 until after the fact.  Declaration of Joel Blank, Docket No. 231-3 ("Blank Decl.") at ¶ 2; Kelvin Decl. at ¶ 4; Manhan Decl. at ¶ 8.  The BCS Defendants and L2 not only didn't conspire; they didn't know one another existed.  Fitbit offers no

evidence that the BCS Defendants had any role in choosing, designing, procuring, or using the cables or packaging of which Fitbit complains.

Therefore, even if L2's actions infringed Fitbit's trademark, the BCS Defendants aren't liable.  Indirect trademark infringement requires proof that a defendant intentionally induced another party to infringe a trademark or continued to supply product to another party knowing the other party was infringing a trademark.  *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 853-54 (1982).  There is no such evidence here.

### 4.   Fitbit Has Not Established Likelihood of Confusion, Let Alone Beyond Any Genuine Dispute of Fact

Fitbit's claim of consumer confusion is premised on its arguments that the refurbished products are "counterfeit" and its claim that L2 marketed the refurbished products with counterfeit cables and packaging.  Those claims fail for the reasons set forth above:  Fitbit's authorities don't show that truthfully marketed refurbished products are counterfeit, and the BCS Defendants aren't responsible for L2's packaging.  But even if those claims had merit, Fitbit's evidence does not establish likelihood of confusion, let alone establish it beyond a genuine issue of fact.

First, Fitbit's likelihood of confusion argument relies on the unsworn report of its expert Hal Poret.  Exh. WV to Fitbit's Motion.  But a motion for summary judgment requires the movant to submit admissible evidence.  Fed. R. Civ. Pro. 56(c).  It is well established that unsworn expert reports are not admissible to support or oppose summary judgment motions.  *A.C. v. City of Santa Clara*, No. 13-CV-03276-HSG, 2015 WL 5350412, at *9 (N.D. Cal. Sept. 14, 2015) ("Unsworn expert reports prepared in compliance with Rule 26(a)(2) do not qualify as affidavits or otherwise admissible evidence for purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment."); *Cahill v. Golden Gate Bridge, Highway & Transportation Dist.*, No. 15-CV-01374-JCS, 2016 WL 1070655, at *5 (N.D. Cal. Mar. 18, 2016) (holding that "unsworn expert reports 'do not qualify as affidavits or

otherwise admissible evidence for purposes of Rule 56."). Fitbit's "likelihood of confusion" argument fails because it relies upon a clearly inadmissible report. Unlike Fitbit, Defendants have filed declarations from their experts in support of this Opposition. Accordingly, the opinions of Defendants' experts are unrebutted, as a matter of law, for purposes of summary judgment.

Second, Fitbit would not be entitled to summary judgment even if the Poret declaration were admissible. The BCS Defendants have provided the admissible Declaration of Professor Ashish Sood, their marketing expert. Declaration of Ashish Sood in support of Defendants' Opposition to Fitbit's Motion ("Sood Decl.), filed concurrently herewith. Dr. Sood's expert opinion contradicts Poret's. Sood Decl., ¶ 3. For instance, as Dr. Sood explains, Poret relies on a survey that is so biased and suggestive that it cannot support any conclusion about likelihood of confusion. Sood Decl., ¶¶ 4-8. The conflict between the experts on likelihood of confusion precludes summary judgment. *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1270 (9th Cir. 1994) (explaining that conflicting expert testimony is itself "sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion").

### 5.    Fitbit's Joint and Several Liability Argument Is Meritless

Finally, Fitbit asserts that the BCS Defendants are liable for infringement by their codefendants. Fitbit Motion 23. Fitbit is wrong.

Fitbit cites *Adobe Systems Inc. v. Blue Source Group, Inc*. 125 F.Supp.3d 945 (N.D. Cal. 2015) for the proposition of joint and several liability, but that case is inapt. In *Adobe,* the court was faced with a Rule 12(b)(6) motion to dismiss the complaint and took the allegations in the complaint as true; the case did not feature any discussion of what evidence of concerted behavior creates joint liability. *Id.* at 973. Fitbit pointedly ignores the relevant standard: "[t]o prevail on its claim of contributory trademark infringement, [a plaintiff] ha[s] to establish that [the defendant] continued to supply its services to one who it knew or had reason to know was engaging in trademark infringement." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 942

(9th Cir. 2011) (citing *Inwood Labs.,* 456 U.S. at 854.)  Here, as is noted above, the undisputed evidence is that BCS did not even know L2 existed until Fitbit filed this case, let alone know that it was engaging in trademark infringement.  Defendants' Motion at 7:8-10.  Fitbit's regurgitation of its familiar conspiracy theories fails for the same reason:  they are conclusions without supporting evidence.

> **6.     Fitbit's Unfair Competition Claims Fail with Its Infringement Claim**

For the reasons set forth above, Fitbit can't prove trademark infringement at all, let alone prove it beyond a genuine issue of fact.  Fitbit admits that its federal and California unfair competition claims rely entirely on its infringement claim.  Fitbit Motion at 23.  The Court should therefore deny the motion as to all of the claims.

> **D.     Fitbit Fails to Meet Its Burden as to Any Claim, Because It Fails to Present Any Admissible Evidence of Damages**

As Fitbit concedes, damages are an element of each claim for relief.  *See*, *e.g.*, Fitbit's Motion at 15:17-20. However, Fitbit presents no admissible evidence regarding damages.  The *only* reference to Fitbit's damages in Fitbit's entire Motion the following single sentence: "Defendants' conduct caused millions of dollars of damage and harm to Fitbit." Fitbit's Motion, at 9:13-14.  And the *only* citation Fitbit offers for that sentence is the unsworn expert report of Greg Regan. *Id*. As a matter of law, unsworn expert reports are not admissible evidence and may not be considered on summary judgment. *See A.C. v. City of Santa Clara*, No. 13-CV-03276-HSG, 2015 WL 5350412, at *9 (N.D. Cal. Sept. 14, 2015) ("Unsworn expert reports prepared in compliance with Rule 26(a)(2) do not qualify as affidavits or otherwise admissible evidence for purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment."); *Cahill v. Golden Gate Bridge, Highway & Transportation Dist*., No. 15-CV-01374-JCS, 2016 WL 1070655, at *5 (N.D. Cal. Mar. 18, 2016) ("unsworn expert reports 'do not qualify as affidavits or otherwise admissible evidence for purposes of Rule 56.").

Because the only evidence Fitbit offered in support of the element of damages—an element of each claim for relief—is inadmissible as a matter of law, Fitbit has failed as a matter of law to meet its burden as to any claim for relief.  Additionally, and independently of the other grounds set forth herein, the Court should deny Fitbit's motion in its entirety on this ground.

**E.     Defendants' Evidentiary Objections to Fitbit's Motion for Partial Summary Judgment**

Defendants submit the following evidentiary objections to the Declaration of Brett S. Millar in support of Fitbit's Motion for Partial Summary Judgment, Docket No. 235 ("Millar Decl."), the Declaration of Jeff Bonham in support of Fitbit's Motion for Partial Summary Judgment, Docket No. 236 ("Bonham Decl."), and the Alinder Decl. Defendants respectfully move that the Court disregard and strike the objectionable evidence set forth below.

**1.     Defendants' Objections to the Declaration of Brett Millar**

| Material Objected to: | Grounds for Objection: |
| --- | --- |
| **OBJECTION NO. 1**<br><br>"While Fitbit does not currently resell or authorize the resale of any refurbished Fitbit products, which are used only for customer return replacements, Fitbit has considered, and is currently considering, an authorized refurbished program for resale."  (Millar Decl., ¶ 5, p. 2:15-17.) | Lacks foundation.  (Fed. R. Evid. 602.) Hearsay [as to authorizations] (Fed. R. Evid. 801.) |

**2.     Defendants' Objections to the Declaration of Jeff Bonham**

| Material Objected to: | Grounds for Objection: |
| --- | --- |
| **OBJECTION NO. 2**<br><br>"Fitbit engaged Defendants to destroy approximately 2 million scrap products | Hearsay [as to terms of engagement] (Fed. R. Evid. 801.) |

| **Material Objected to:** | **Grounds for Objection:** |
|---|---|
| for destruction and recycling . . ." (Bonham Decl., ¶ 1, p. 1:13-14.) | |
| **OBJECTION NO. 3** "Between May and September 2016, the Fitbit brand protection team purchased nine "Fitbit" branded products that were being sold through Groupon.com, that Fitbit determined had previously been designated for scrap destruction and recycling as part of Fitbit's standard quality control processes.  Attached hereto as **Exhibit A** are true and correct copies of the screenshots I took of the Groupon listings for the products purchased."  (Bonham Decl., ¶ 3, p. 1:16-20.) | Hearsay (Fed. R. Evid. 801.)  Hearsay [as to truth of any information contained in Exhibit A] (Fed. R. Evid. 803(6).) |
| **OBJECTION NO. 5** "Attached hereto as **Exhibit B** are true and correct screenshots of customer support case notes related to these Groupon purchases, redacted in part for customer privacy as set forth below.  The first customer support case note excerpt involved a customer who had an issue with the first device she purchased from Groupon.  The customer got a replacement device from Groupon; however that replacement had another issue and Groupon refused to assist.  The customer contacted Fitbit and Fitbit eventually provided the customer with a replacement product.  After reviewing the customer's profile, Fitbit was able to confirm that the two devices were previously designated as scrap by Fitbit." (Bonham Decl., ¶ 5, p. 2:1-8.) | Hearsay (Fed. R. Evid. 801.) Hearsay [as to truth of any information contained in Exhibit B] (Fed. R. Evid. 803(6); *Thompson v. TRW Auto., Inc.*, No. 2:09-CV-1375-JAD-PAL, 2014 WL 12781291, at *12 (D. Nev. June 2, 2014) (contents of exhibit inadmissible until party provides Rule 902(11) information and establishes a hearsay exception); *N.L.R.B. v. First Termite Control Co.¸* 646 F.2d 424, 429-30 (9th Cir. 1981), *opinion amended on reh'g sub nom. Nat'l Labor Relations Bd. v. First Termite Control Co. Inc.* (9th Cir. Aug. 5, 1981) (absent a showing of the elements of the business records exception, content of documents are inadmissible hearsay). |
| **OBJECTION NO. 5** | Hearsay (Fed. R. Evid. 801.)  Hearsay [as to truth of any information contained in |

21

| **Material Objected to:** | **Grounds for Objection:** |
|---|---|
| "The second customer support case note excerpt included in **Exhibit B** involved a customer who claimed the band of the device purchased from Groupon had sheared off.  Upon investigation, Fitbit confirmed that the unit had been sent to scrap before this customer paired the device with his account.  Although Fitbit initially denied the customer's request for a replacement, Fitbit also eventually provided this customer with a replacement product."  (Bonham Decl., ¶ 6, p. 2:9-13.) | Exhibit B] (Fed. R. Evid. 803(6); *Thompson v. TRW Auto., Inc.*, No. 2:09-CV-1375-JAD-PAL, 2014 WL 12781291, at *12 (D. Nev. June 2, 2014) (contents of exhibit inadmissible until party provides Rule 902(11) information and establishes a hearsay exception); *N.L.R.B. v. First Termite Control Co.*¸646 F.2d 424, 429-30 (9th Cir. 1981), *opinion amended on reh'g sub nom. Nat'l Labor Relations Bd. v. First Termite Control Co. Inc.* (9th Cir. Aug. 5, 1981) (absent a showing of the elements of the business records exception, content of documents are inadmissible hearsay). |
| **OBJECTION NO. 6**<br><br>"The third customer support case note except included in **Exhibit B** involved a customer who bought a device from Groupon and complained that it stopped working.  Fitbit advised this customer that Groupon was not an authorized retailer, to which the customer replied that the warranty card was associated to Fitbit.  When the customer was denied a replacement, he said 'Well that sucks.'  Fitbit has also confirmed that the serial number associated with the device paired to this customer's account was for a device that had been designated as scrap."  (Bonham Decl., ¶ 7, p. 2:14-20.) | Hearsay (Fed. R. Evid. 801.)  Hearsay [as to truth of any information contained in Exhibit B] (Fed. R. Evid. 803(6); *Thompson v. TRW Auto., Inc.*, No. 2:09-CV-1375-JAD-PAL, 2014 WL 12781291, at *12 (D. Nev. June 2, 2014) (contents of exhibit inadmissible until party provides Rule 902(11) information and establishes a hearsay exception*); N.L.R.B. v. First Termite Control Co.*¸646 F.2d 424, 429-30 (9th Cir. 1981), opinion amended on reh'g sub nom. *Nat'l Labor Relations Bd. v. First Termite Control Co. Inc.* (9th Cir. Aug. 5, 1981) (absent a showing of the elements of the business records exception, content of documents are inadmissible hearsay. |
| **OBJECTION NO. 7**<br><br>"Finally is another customer complaint included in **Exhibit B** where the customer complained about battery charging issues with a refurbished Charge HR purchased on Groupon and specifically referenced L2, because L2 | Hearsay (Fed. R. Evid. 801.)  Hearsay [as to truth of any information contained in Exhibit B] (Fed. R. Evid. 803(6); *Thompson v. TRW Auto., Inc.*, No. 2:09-CV-1375-JAD-PAL, 2014 WL 12781291, at *12 (D. Nev. June 2, 2014) (contents of exhibit inadmissible until party provides |

| Material Objected to: | Grounds for Objection: |
|---|---|
| was not responding to her warranty requests and she wanted Fitbit to know how Fitbit 'is being represented' by Groupon and L2, even including L2's full business address."  (Bonham Decl., ¶ 8, p. 2:21-25.) | Rule 902(11) information and establishes a hearsay exception); *N.L.R.B. v. First Termite Control Co.,* 646 F.2d 424, 429-30 (9th Cir. 1981), opinion amended on reh'g sub nom. *Nat'l Labor Relations Bd. v. First Termite Control Co. Inc.* (9th Cir. Aug. 5, 1981) (absent a showing of the elements of the business records exception, content of documents are inadmissible hearsay). |
| **OBJECTION NO. 8**<br><br>"I have analyzed a sample of 100 "Fitbit" branded units out of thousands recently returned by L2 and determined that 97 of the 100 products appear, either conclusively or with a very high likelihood, based on Fitbit's internal records and data, to have been designated for scrap destruction, and therefore would have been sent to BCS to be destroyed and/or recycled at the commodity level . . ."  (Bonham Decl., ¶ 10, p. 3:6-9.) | Lacks foundation.  (Evid. Code, § 400, *et seq.*)<br>Hearsay [Fed. R. Evid. 801.)  Failure to supplement interrogatory response.  (Fed. R. Civ. Proc. 26(e)(1)(A).) (The documentary evidence underlying this assertion was created on April 26, 2018, but not provided to Defendants until May 24, 2018, despite being responsive to an interrogatory served on February 8, 2018.) |

### 3.   Defendants' Objections to the Declaration of Zachary Alinder

| Material Objected to: | Grounds for Objection: |
|---|---|
| **OBJECTION NO. 9**<br><br>Expert Report of Michael Easterbrook (Alinder Decl., Ex. VV.) | Hearsay (Fed. R. Evid. 801; *A.C. v. City of Santa Clara,* No. 13-CV-03276-HSG, 2015 WL 5350412, at *9 (N.D. Cal. Sept. 14, 2015) ("Unsworn expert reports prepared in compliance with Rule 26(a)(2) do not qualify as affidavits or otherwise admissible evidence for purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment."); *Cahill v. Golden Gate Bridge, Highway & Transportation Dist.*, No. 15-CV-01374- |

23

| **Material Objected to:** | **Grounds for Objection:** |
|---|---|
| | JCS, 2016 WL 1070655, at *5 (N.D. Cal. Mar. 18, 2016) ("unsworn expert reports 'do not qualify as affidavits or otherwise admissible evidence for purposes of Rule 56."). |
| **OBJECTION NO. 10** <br><br> Expert Report of Hal Poret (Alinder Decl., Ex. WW.) | Hearsay (Fed. R. Evid. 801; *A.C. v. City of Santa Clara*, No. 13-CV-03276-HSG, 2015 WL 5350412, at *9 (N.D. Cal. Sept. 14, 2015) ("Unsworn expert reports prepared in compliance with Rule 26(a)(2) do not qualify as affidavits or otherwise admissible evidence for purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment."); *Cahill v. Golden Gate Bridge, Highway & Transportation Dist.*, No. 15-CV-01374-JCS, 2016 WL 1070655, at *5 (N.D. Cal. Mar. 18, 2016) ("unsworn expert reports 'do not qualify as affidavits or otherwise admissible evidence for purposes of Rule 56."). |
| **OBJECTION NO. 11** <br><br><br> Excerpts from Expert Report of Greg Regan (Alinder Decl., Ex. XX.) | Hearsay (Fed. R. Evid. 801); *A.C. v. City of Santa Clara*, No. 13-CV-03276-HSG, 2015 WL 5350412, at *9 (N.D. Cal. Sept. 14, 2015) ("Unsworn expert reports prepared in compliance with Rule 26(a)(2) do not qualify as affidavits or otherwise admissible evidence for purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment."); *Cahill v. Golden Gate Bridge, Highway & Transportation Dist.*, No. 15-CV-01374-JCS, 2016 WL 1070655, at *5 (N.D. Cal. Mar. 18, 2016) ("unsworn expert reports 'do not qualify as affidavits or otherwise admissible evidence for purposes of Rule 56.").____ |

24

1
2
3
4
5
6

## IV.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Fitbit's Motion for partial summary judgment.

Respectfully submitted,

DATED:  June 7, 2018

BROWN WHITE & OSBORN LLP

By  s/*Caleb E. Mason*
_____
THOMAS M. BROWN
KENNETH P. WHITE
CALEB E. MASON
MATTHEW G. WHITTEN
Attorneys for Defendants
P-COVE ENTERPRISES INC. dba
BUYERS CONSULTATION SERVICE,
et al.

4850-9307-2487, v. 1