1  BROWN WHITE & OSBORN LLP
   THOMAS M. BROWN (Bar No. 117449)
2  KENNETH P. WHITE (Bar No. 173993)
   CALEB E. MASON (Bar No. 246653)
3  MATTHEW G. WHITTEN (Bar No. 307410)
   333 South Hope Street, 40th Floor
4  Los Angeles, California 90071-1406
   Telephone:  213. 613.0500
5  Facsimile:   213.613.0550

6  Attorneys for Defendants
   P-COVE ENTERPRISES INC. dba
7  BUYERS CONSULTATION SERVICE,
   ENVIRONMENTAL LIQUIDATION, INC.,
8  JONATHAN MANHAN, and
   FRANCIS MICHAEL BAKER

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11

12 | FITBIT, INC., | Case No.: 3:17-cv-00079-EMC-KAW |
|---|---|
13 | Plaintiffs, | Judge:   Hon. Edward M. Chen |
14 | v. | **DECLARATION OF MATTHEW WHITTEN IN SUPPORT OF DEFENDANTS' OPPOSITION TO FITBIT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
15 | P-COVE ENTERPRISES INC. dba BUYERS CONSULTATION SERVICE, | |
16 | a California Corporation; ENVIRONMENTAL LIQUIDATION, | |
17 | INC., a California Corporation; JONATHAN MANHAN, an individual; | Date:   June 28, 2018 |
18 | FRANCIS MICHAEL BAKER aka MIKE BAKER, an individual. | Time:   1:30 p.m. |
|  |  | Court:   Courtroom 5, 17th Fl. |
19 | Defendants. | |

20

21

22

23

24

25

26

27

28

DECLARATION OF MATTHEW WHITTEN ISO DEFENDANTS' OPPOSITION TO FITBIT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

# DECLARATION OF MATTHEW G. WHITTEN

I, MATTHEW G. WHITTEN, hereby declare as follows:

1.      I am an attorney admitted to practice in the Northern District of California.  I am an Associate at Brown White & Osborn LLP, and I represent Defendants P-Cove Enterprises Inc. dba Buyers Consultation Service ("BCS"), Environmental Liquidation, Inc. ("ELI"), Jonathan Manhan ("Manhan"), and Francis Michael Baker ("Baker") (collectively, "Defendants") in this case.  I make this declaration from personal knowledge, and if called as a witness I could and would testify competently to the matters set forth herein.

2.      On February 8, 2018, Defendant BCS propounded its second set of interrogatories pursuant to Rule 33 on Plaintiff Fitbit, Inc. ("Fitbit").  Interrogatory No. 12 requested that Fitbit "[s]tate all facts supporting YOUR claim that YOU have suffered economic harms caused by any Defendants, including the nature and amount of any economic harm you claim YOU have suffered."  Fitbit served responses to BCS' Interrogatories, Set Two on March 14, 2018.  Fitbit has not served any amended and/or supplemental responses to BCS' Interrogatories, Set Two.

3.      On May 24, 2018, at 6:23 p.m. Fitbit served a production of documents on Defendants.  Among the documents served was a spreadsheet Bates stamped FIT014072.  This spreadsheet contains information about 100 Fitbit-branded bracelets that Fitbit received from former defendant Laguna 2, LLC ("L2") as part of their settlement agreement.  This was the first time that Defendants had seen this information.  I examined the spreadsheet and found that it had been created on April 26, 2018 at 10:54 a.m., almost one month prior to the date of its production.  This document underlies the statements of Jeff Bonham in paragraph 10 of his declaration in support of Fitbit's Motion for Partial Summary Judgment.

4.      Fitbit had an obligation pursuant to FRCP 26(e)(1) to supplement its response to Interrogatory No. 12 to identify this document and provide information

about its contents to Defendants.  Producing this document for the first time on the evening of the close of fact discovery, while having never before indicated this document's existence through a supplemented interrogatory response or otherwise is wholly improper.  Rule 26(e)(1) requires supplementation be made in a timely manner when a response is known to be incomplete.  Fitbit waited nearly an entire month to produce this document, and did so after Defendants would have had a reasonable opportunity to depose a witness with knowledge of the document's contents.

5.     Defendants therefore request that, as a sanction for failing to comply with its obligations under Rule 26(e)(1), the Court strike paragraph 10 of the Declaration of Jeff Bonham in support of Fitbit's Motion for Partial Summary Judgment, ECF No. 236, and not consider the contents thereof in ruling on Fitbit's Motion for Partial Summary Judgment ("Fitbit's Motion").

6.     A true and correct copy of the relevant sections of the deposition transcript of Defendant BCS' designated FRCP 30(b)(6) witness, Jonathan Manhan, is attached hereto as **Exhibit A**.

7.     A true and correct copy of a news release from the California Environmental Protection Agency, Department of Toxic Substances Control dated November 7, 2005 is attached hereto as **Exhibit B**.  This news release discusses a settlement of $31,000 between the California Department of Toxic Substances Control and ARC International Corporation for hazardous waste violations.  Ex. B at p.1.

8.     A true copy of the "Green Solutions Network" page of the Global Reclaim Recycling Alliances website is attached hereto as **Exhibit C**.  This page states that Michael Easterbrook spent three years as Director of Compliance and ISO at ARC International, Southern California's largest electronic waste recycling facility.

9.     Exhibit A to Defendants' Request for Judicial Notice in support of Defendants' Opposition to Fitbit's Motion ("RJN") is a criminal complaint in Los Angeles Superior Court Case No. BA364451 against Jay Hooper, Michael Easterbrook and Bassam Hasan for two counts of knowingly disposing of hazardous

waste at a site having no permit in violation of California Health & Safety Code section 25189.5(b).  RJN, Ex. A at p.1.

10.     Exhibit B to Defendants' RJN is an amended criminal complaint in Los Angeles Superior Court Case No. BA364451, adding ARC International Corp. ("ARC") as a defendant.  RJN, Ex. B at p.1.  ARC was also charged with two counts of knowingly disposing of hazardous waste at a site having no permit in violation of California Health & Safety Code section 25189.5(b).  *Id.*

11.     Exhibit C to Defendants' RJN is a docket in Los Angeles Superior Court Case No. BA364451 relating to ARC.  RJN, Ex. C at p.1.  On July 26, 2010, ARC pleaded guilty to knowingly disposing of hazardous waste at a site having no permit in violation of California Health & Safety Code section 25189.5(b).  *Id.* at p. 2.

12.     Exhibit D to Defendants' RJN is a docket in Los Angeles Superior Court Case No. BA364451 relating to Michael Easterbrook.  RJN, Ex. D at p.1.  On February 22, 2010 both charges of knowingly disposing of hazardous waste at a site having no permit in violation of California Health & Safety Code section 25189.5(b) were dismissed.  *Id.* at p.2.

13.     The Expert Report of Michael Easterbrook was filed in support of Fitbit's Motion as Exhibit VV to the Declaration of Zachary Alinder, Docket No. 234 ("Alinder Decl.").  In his curriculum vitae  section, Mr. Easterbrook states that he started in the electronic waste recycling industry in 2007 as Compliance Coordinator at ARC.  Alinder Decl., Ex. VV, p. 2, ¶ 2.  Mr. Easterbrook was promoted to Compliance Director.  *Id.*  Absent from Mr. Easterbrook's narrative of his time working at ARC is the fact that under his watch as Compliance Director, ARC pleaded guilty to knowingly disposing of hazardous waste at a site having no permit in violation of California Health & Safety Code section 25189.5(b).

1

2      I declare under penalty of perjury under the laws of California and the United

3   States that the foregoing is true and correct, and that this declaration is executed on

4   June 7, 2018 in Los Angeles, California.

5

6                                          _/s/ Matthew G. Whitten_
                                            MATTHEW G. WHITTEN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT A**

1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3         SAN FRANCISCO DIVISION

4

5    FITBIT, INC., a Delaware        )

6    corporation,                    )    Case No.

7            Plaintiffs,             )    3:17-cv-00079-

8              vs.                   )    EMC (KAW)

9    LAGUNA 2 LLC, et al,            )

10           Defendants.             )    Volume I

11                                   )    Pages 1-276

12

13

14    VIDEOTAPED DEPOSITION OF P-COVE ENTERPRISES,

15    INC. THROUGH ITS 30(b)6 WITNESS JONATHAN MANHAN

16              TAKEN ON

17         TUESDAY, MAY 8, 2018

18            Los Angeles, CA

19

20

21

22    Reported by:

23    BRENDA R. COUNTZ, RPR-CRR

24    CSR NO. 12563

25    JOB NO. 141724

1      A.    I believe the process speaks for

2   itself.

3      Q.    What do you mean by that?

4      A.    The product was refurbished and resold

5   or recycled per the SOW.

6      Q.    We'll get to the SOW in terms of those

7   words.

8            Did you do anything -- strike that.

9            Did you inform Cali about the statement

10   of work with Fitbit?

11           MR. MASON:  Vague and ambiguous.

12           THE WITNESS:  I don't recall.

13   BY MR. ALINDER:

14      Q.    So you may have had a conversation or

15   communication with Cali that informed them of the

16   terms of the statement of work?

17           MR. MASON:  Calls for speculation.

18           THE WITNESS:  Yes.

19   BY MR. ALINDER:

20      Q.    Handing what has been previously marked

21   Exhibit 80, can you identify what Exhibit 80 is?

22      A.    It looks like an e-mail from Mike Baker

23   to Evan North and Greg Bloom at Verizon as well

24   as Fitbit.

25      Q.    It appears to be dated at the top

Page 112

1    Tuesday, February 16, 2016.

2         Do you see that?

3         MR. MASON:  The document speaks for

4    itself.  The witness neither sent nor received

5    the document.

6         MR. ALINDER:  Well, the witness is BCS.

7         MR. MASON:  I understand that.  You can

8    ask whatever foundational questions you want.

9    BY MR. ALINDER:

10    Q.   It appears to be from Mike Baker at

11   scrapdoctor.com.

12        Do you see that?

13   A.   Yes.

14   Q.   And that is the e-mail address for Mike

15   Baker at BCS, right?

16   A.   Right.

17   Q.   And it appears to have been sent

18   Tuesday, February 16, 2016 at 12:46 p.m.,

19   correct?

20   A.   Correct.

21   Q.   The e-mail string is Bates numbered FIT

22   11615 to FIT 11617.

23        Do you see that?

24   A.   Yes.

25   Q.   And in the second line of Mr. Baker's

1   e-mail he says, "BCS has been given strict

2   instructions to destroy all Fitbits for

3   recycling."

4            Do you see that?

5       A.   Yes.

6       Q.   I believe in the prior deposition you

7   said that you did not believe you got the Verizon

8   deal.

9            Do you recall that?

10           MR. MASON:  The prior deposition was a

11  different witness but you can answer.

12  BY MR. ALINDER:

13      Q.   In your individual deposition I believe

14  you stated that BCS didn't get the Verizon deal;

15  is that correct?

16      A.   Yes, that is correct.

17      Q.   Do you recall why BCS didn't get the

18  Verizon deal?

19           MR. MASON:  Calls for speculation.

20           THE WITNESS:  I believe so, yes.

21  BY MR. ALINDER:

22      Q.   What was the reason?

23      A.   Jennifer had told Mike to tell Verizon

24  that we would destroy these -- or asked us to

25  destroy them for Verizon and pay them for

1    commodity value.

2         And Verizon said they were selling them

3    on the open market or the secondary market for

4    much better money and they chose not to do the

5    deal.

6        Q.   Do you know if there's any other e-mail

7    or other communication between Mr. Baker and

8    Ms. Windsor that confirms what you just testified

9    about?

10        MR. MASON:   Calls for speculation.  You

11   are asking about e-mails between other people.

12        MR. ALINDER:   He's BCS right now.

13        MR. MASON:   I understand it.

14   Clarifying the question, calls for speculation,

15   lacks foundation.

16        THE WITNESS:   I believe there was some

17   other e-mails in response to this but I couldn't

18   say exactly what they were.

19   BY MR. ALINDER:

20        Q.   Isn't it the truth that BCS decided to

21   make Verizon a sacrificial lamb in order to keep

22   up appearances with Fitbit?

23        MR. MASON:   Argumentative.  I doubt

24   there is a proper deposition question including

25   the phrase "sacrificial lamb."  Vague and

Page 275

1   STATE OF CALIFORNIA        )    SS

2   COUNTY OF LOS ANGELES      )

3           I, BRENDA R. COUNTZ, Certified Shorthand

4   Reporter No. 12563 for the State of California,

5   do hereby certify:

6           That prior to being examined, the

7   witness named in the foregoing deposition was

8   duly sworn to testify the truth, the whole truth,

9   and nothing but the truth;

10          That said deposition was taken down by

11  me in shorthand at the time and place therein

12  named and thereafter transcribed and that the

13  same is a true, correct, and complete transcript

14  of said proceedings.

15          Before completion of the deposition,

16  review of the transcript [X] was [  ] was not

17  requested.  If requested, any changes made by the

18  deponent during the period allowed are appended

19  hereto.

20          I further certify that I am not

21  interested in the outcome of the action.

22  Witness my hand this 11th day of May, 2018.

23

24                  _____

25                  Brenda R. Countz, CSR No. 12563

# **EXHIBIT B**



**CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY**

# NEWS RELEASE

## Department of Toxic Substances Control

**T - 62 - 05**
For Immediate Release
November 7, 2005

Contact: Jeanne Garcia
818.551.2176
Ron Baker
916.324.3142

### $31,000 Settlement Reached with ARC International Corporation

Los Angeles – The California Department of Toxic Substances Control (DTSC) announced it has reached settlement with ARC International Corporation (ARC) for hazardous waste violations at its 911 South Bixby Drive facility in City of Industry. Under the terms of the settlement, ARC will pay a penalty of $15,000 and donate $19,530 of refurbished computer equipment to local schools.

Specifically, ARC will donate 98 personal computers, 94 cathode ray tube (CRT) monitors and 29 printers to the following local schools: Caroldale Elementary and Broadous Elementary of Los Angeles Unified School District, Nativity School and St. Martha's School of the Archdiocese of Los Angeles, and Career Partners working in conjunction with Gabrielino High School of the San Gabriel Unified School District.

ARC is authorized by DTSC to handle and recycle waste electronic devices and is an approved handler of electronic waste under the Covered Electronic Waste Recovery and Recycling Payment System administered by the Integrated Waste Management Board. In addition, ARC uses discarded electronic components of electronic equipment diverted from landfills to remanufacture and refurbish computers for resale to the public.

California has adopted regulations for handling and transporting certain widely-generated, relatively low risk hazardous wastes including televisions, computer monitors, computers and other electronic wastes. After these products reach the end of their useful lives or become obsolete, they are required to be managed as hazardous wastes because they contain hazardous substances.

Hazardous waste may not be discarded with other municipal trash. Instead, it must be sent to a facility that has a permit for hazardous waste treatment (including recycling), storage, or disposal.

The settlement stems from violations observed by DTSC inspectors during an inspection at the facility conducted on December 14, 2004. The violations noted were:

- - - M O R E - - -

DTSC News Release
November 7, 2005
Page 2

- Failing to submit to DTSC a cost estimate for closure of its facility no later than 30 days prior to recycling or treating any CRT or Universal Waste Electronic Device (UWED) materials.
- Failing to submit to DTSC documentation demonstrating financial responsibility for liability and financial assurance for closure of its facility no later than 30 days prior to recycling or treating any CRT or UWED materials.

ARC has corrected all violations noted during the inspections.

# # #

*The Department of Toxic Substances Control's mission is to restore, protect, and enhance the environment and ensure public health, environmental quality and economic vitality by regulating hazardous waste, conducting and overseeing cleanups, and developing and promoting pollution prevention.*

# **EXHIBIT C**

4812-7378-1352, v. 1

Green Soutions Network
Home
Services
Company
Alliances
Contact
Green Solutions Network
Growing Green is a Global Effort
Global Reclaim Recycling is proud to work in alliance with many



experts, agencies and companies in the environmental industry. With a team of key influences working together, sharing expertise, technology and services, Global Reclaim is able to assure the public that our services are the best in the business, as new technologies are quickly implemented and offered. And if we are not able to provide the service you are in need of, we are quickly able to direct you to the right person, company or agency that can.

Bruce Jan - CEO and Co-Founder

Bruce Jan is the CEO and Co-Founder of CycleLution, Inc., a Software, Marketing, and Consulting firm that focus on providing web-based software solution, compliance and ISO consulting, marketing plan and website development for recycling industry, where he has more than nine years of experiences.

Bruce Jan has been running various recycling operations that include waste paper, plastics, metals, used beverage containers, and electronic waste. His extended experiences and knowledge provide the solid foundation for CycleLution's growth.

www.cyclelutions.com

Mike Easterbrook - ISO Consulting Specialist

Mike Easterbrook is an ISO Consultant specializing in hands-on ISO implementation for recycling operations. With three years experience as Director of Compliance and ISO at Southern California's largest electronic waste recycling facility, ARC International, Mike is the perfect candidate for your recycling operation certification needs. Extensive knowledge of the industry, rapid implementation, hands-on training and a competitive rate give Mike the competitive edge that other consultants can not offer.

Mike is currently partnered with CycleLution, Inc., a web-based software solution for scrap recyclers. Mike can be reached at 310-221-1578 or via email at mike@cyclelution.com.

© 2010 Global Reclaim Recycling Alliances. All Rights Reserved

**Phone: 949-232-6155  /  Email: info@globalreclaim.com**